# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| T1 Payments LLC, | Case No. 2:19-cv-01816-APG-DJA |
| Plaintiff, | |
| v. | **ORDER AND**<br>**REPORT AND RECOMMENDATION** |
| New U Life Corporation, | |
| Defendant. | |

This matter is before the Court on the following motions:

- Defendant's Motion to File First Amended Counterclaim (ECF No. 42), filed on October 1, 2020, Declaration (ECF No. 43), filed on October 1, 2020, Proposed Counterclaim (ECF No. 44), filed on October 1, 2020, Response (ECF No. 53), filed on October 15, 2020, and Reply (ECF No. 58), filed on October 22, 2020.

- Plaintiff's Motion to Vacate Order ECF No. 39 (ECF No. 47), filed on October 2, 2020, Response (ECF No. 55), filed on October 16, 2020, and Reply (ECF No. 56), filed on October 19, 2020.

- Plaintiff's Motion to Compel Discovery (ECF No. 49), filed on October 5, 2020, Response (ECF No. 57), filed on October 19, 2020, Errata to Response (ECF No. 70), filed on October 27, 2020, and Reply (ECF No. 61), filed on October 26, 2020.

- Defendant's Motion to Extend (ECF No. 50), filed on October 9, 2020, and Response (ECF No. 60), filed on October 23, 2020.

- Plaintiff's Motion for Protective Order (ECF No. 62), filed on October 26, 2020, Response (ECF No. 74), filed on November 9, 2020, and Reply (ECF No. 77), filed on November 16, 2020.

1    • Plaintiff's Motion to Disqualify Counsel (ECF No. 64), filed on October 26, 2020,

2         Appendix Volumes 1-5 (ECF Nos. 65-69), filed on October 26, 2020, Response

3         (ECF No. 73), filed on November 9, 2020, Joinder (ECF No. 75), filed on

4         November 9, 2020, Errata to Response (ECF No. 81), filed on November 20, 2020,

5         Reply (ECF No. 79), filed on November 16, 2020, and Objection (ECF No. 80),

6         filed on November 17, 2020.

7    • Defendant's Motion to Compel (ECF No. 72), filed on October 30, 2020,

8         Response (ECF No. 76), filed on November 13, 2020, and Reply (ECF No. 82),

9         filed on November 20, 2020.

10   • Plaintiff's Motion for Leave to File Excess Pages (ECF No. 78), filed on

11        November 16, 2020, Response (ECF No. 80), filed on November 17, 2020, and

12        Reply (ECF No. 83), filed on November 24, 2020.

13   The Court finds these matters properly resolved without a hearing.  LR 78-1.

14   **I.      BACKGROUND**

15        The parties are familiar with the facts of this case and the Court will only repeat them here

16   as necessary.  New U Life sells various health supplements through a multilevel marketing model

17   ("MLM").  While MLM and nutraceutical businesses like New U Life's are legal, they are

18   classified as "high risk" by payment processors because they tend to be more prone to

19   chargebacks and face a high level of regulatory scrutiny.  On or about October 26, 2018, New U

20   Life executed a Merchant Services Application and Card Payment Processing Agreement

21   (collectively, the "CPPA") with T1 Payments to open a merchant account on behalf of New U

22   Life for the purpose of processing credit card transactions.  The parties dispute who ended the

23   contract and who is entitled to the funds held by T1.

24        The parties raise 8 discovery disputes for the Court to decide.  Given the extensive

25   number of motions at issue, the Court will address the arguments by the parties separately in

26   discussing each motion below.

27        / / /

28        / / /

1

2

## II.      DISCUSSION

### a.  New U's Counterclaim (ECF No. 42)

New U seeks to file a First Amended Counterclaim to add 11 claims for: Fraud,
conversion, civil theft, money had and received, unjust enrichment, civil RICO claims based on
Nevada and federal law, breach of contract, breach of covenant of good faith and fair dealing, and
declaratory relief.  (ECF No. 42).  It claims that it recently discovered new facts in September
2020, when it retained a new law firm that has expertise in payment processing matters and T1
concealed this information.  New U argues that there is good cause to allow the amendment and
T1 will not suffer prejudice as fact discovery has not closed and a trial date has not been set.

T1 responds that New U did not present good cause or excusable neglect for the late
amendment request simply because its prior attorneys were not experienced enough to recognize
the applicable counterclaims.  (ECF No. 53).  It also questions whether the counterclaims are
futile and therefore, amendment should not be permitted.  Further, T1 argues that it would incur
unfair prejudice based on additional expense to conduct discovery.

New U replies that it diligently pursued discovery to learn of the information that forms
the basis for the proposed counterclaims.  (ECF No. 58).  It also contends that the amendment is
not futile as each counterclaim is supported by factual information and sufficiently pled.  New U
also argues that there is no undue prejudice as there have been several extensions to the discovery
period due to COVID-19 concerns and conducting additional discovery on these counterclaims is
not sufficient to preclude amendment.

The Court agrees with New U's position and is satisfied that it has met the appropriate
standard for amendment.  Rule 15(a)(2) of the Federal Rules of Civil Procedure, regarding the
amendment of pleadings, directs that "[t]he court should freely give leave when justice so
requires."  The Ninth Circuit Court of Appeals has repeatedly cautioned courts in this circuit to
"liberally allow a party to amend its pleading."  *Sonoma Cnty. Ass'n of Ret. Emps. v. Sonoma
Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).  "Courts may decline to grant leave to amend only if
there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant,
repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

1   opposing party by virtue of allowance of the amendment, or futility of amendment, etc.'" *Id.* at

2   1117 (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)).

3      When leave to amend is sought after the amendment deadline in the court's scheduling

4   order has expired, the movant must also show good cause to reopen the amendment period and

5   excusable neglect for the delay. *See* Fed. R. Civ. P. 6(b)(1)(B) (stating "the court may, for good

6   cause, extend the time . . . on motion made after the time has expired if the party failed to act

7   because of excusable neglect."); *see also* Fed. R. Civ. P. 16(b)(4).  In evaluating excusable

8   neglect, the court weighs: "(1) the danger of prejudice to the non-moving party, (2) the length of

9   the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including

10  whether it was within the reasonable control of the movant, and (4) whether the moving party's

11  conduct was in good faith."  *Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004) (citing *Pioneer*

12  *Investment Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 395 (1993)).

13  The weight assigned to these factors is left to the court's discretion.  *Id.*  When a court can

14  "conceive of facts that would render plaintiff's claim viable," or "it appears at all possible that the

15  plaintiff can correct the defect," an amendment should not be found futile.  *Balistreri v. Pacifica*

16  *Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988) (internal quotation marks and citations omitted).

17     As New U filed its Motion to Amend after the expiration of the deadline to amend the

18  pleadings, March 20, 2020, it falls under Rule 16.  (ECF No. 14).[1]  The Court finds that New U

19  should be permitted to amend to assert counterclaims as requested because they have satisfied the

20  good cause and excusable neglect standards.  Amendment at this stage would be neither

21  extraordinarily disruptive nor prejudicial to T1.  Indeed, T1 is clearly aware of the proposed

22  counterclaims and the amendment merely clarifies the scope of this case.  The parties have not yet

23  filed dispositive motions, the settlement conference has not yet been conducted, and there is no

24  trial set.

25

26

27

28     [1] The extension of discovery deadlines in Order ECF No. 24 and subsequently, Order ECF No. 39
    did not include extending the deadline to amend the pleadings and add parties.

1    Further, the passage of time is not reason enough to preclude amendment. *See, e.g.,*

2  *Roberts v. Arizona Bd. of Regents*, 661 F.2d 796, 798 (9th Cir. 1981) ("Ordinarily, leave to amend

3  pleadings should be granted regardless of the length of time of delay by the moving party absent a

4  showing of bad faith by the moving party or prejudice to the opposing party."). Also, T1 has not

5  shown that New U's proposed amendment concerning counterclaims is futile. Rather, T1's

6  arguments appear to be centered on the fact that discovery will be needed on the counterclaims

7  and it wants to avoid such discovery. Therefore, the Court will grant the Motion as New U has

8  provided sufficient good cause and excusable neglect to amend and assert the proposed

9  counterclaims (ECF No. 42).

10    **b.  T1's Motion to Vacate (ECF No. 47)**

11    T1 seeks to vacate the scheduling order (ECF No. 39) and reinstate the previous – now

12  expired deadlines – because it was "defrauded" into agreeing to extend discovery deadlines prior

13  to knowing New U would seek to file counterclaims. (ECF No. 47). It contends that New U

14  attorneys violated ethical rules and the duty of candor to the Court, which warrants granting T1

15  attorneys fees for having to bring this request. In response, New U denies all attempts to commit

16  any fraud and asserts that T1's Motion is brought in bad faith as it is retaliatory. (ECF No. 55).

17  T1 replies that New U is again misrepresenting and omitting material information to justify its

18  actions. (ECF No. 56).

19    A district court "possesses the inherent procedural power to reconsider, rescind, or modify

20  an interlocutory order for cause seen by it to be sufficient[,]" so long as it has jurisdiction. *City of*

21  *Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)

22  (quotation and emphasis omitted); *see also Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th

23  Cir. 2013). This district's local rule LR 59-1 advises that "[a] party seeking reconsideration . . .

24  must state with particularity the points of law or fact that the court has overlooked or

25  misunderstood." LR 59-1(a). "Motions for reconsideration are disfavored. A movant must not

26  repeat arguments already presented" except in narrow circumstances. *Id*. at (b).

27    T1 does not set forth a valid reason why the Court should reconsider Order ECF No. 39.

28  Rather, its motion to vacate is inflammatory, punitive, and indicative of the deterioration in

relationship with opposing counsel.  The clear purpose of the Motion is to prevent New U from doing any discovery on its counterclaims.  Indeed, reversing a discovery extension would effectively end discovery at a premature stage of this litigation given the Court's decision to permit the counterclaims.  Resolution of this action on the merits would not be promoted by granting T1's request.  Despite the strong rhetoric in T1's Motion, the Court is not persuaded that the goals of Fed.R.Civ.P. 1 would be furthered by such a vindictive action.  The Court's position should not be misinterpreted to mean it is opening up a brand new discovery period and free rein has been granted to New U to conduct a massive amount of new discovery.  Rather, the Court expects New U and T1 to act diligently to complete discovery in a timely fashion especially given the prior discovery extensions permitted in this action.  The Court will deny T1's Motion to Vacate (ECF No. 47).

### c.   T1's Motion to Compel (ECF No. 49)

T1 makes three requests as part of its Motion to Compel: (1) New U supplement its response to interrogatory no. 24; (2) New U produce all non-privileged documents responsive to request for documents nos. 1-3, 9-10, 12, 17-18, 24-25, 27, 31, 42-43, 49, 56, 61, 62, 68-69; (3) New U supplement its response to request for documents nos. 72-73 that correctly identify the documents produced that are responsive to the corresponding requests.  T1 also claims that New U's objections to all but two of the document requests are untimely as the requests were served on February 12, 2020 and the deadline to respond was March 13, 2020, which T1 agreed to extend until March 27, 2020.  New U's responses were served on April 29, 2020 and its documents were produced on May 2, 2020.  As such, T1 contends that New U's objections should be waived or are improper.

New U responds that T1's extensive discovery requests are not relevant to the claims or defenses at issue in this case.  (ECF No. 57).  It argues that T1 must not be allowed to both claim that the contract was terminated due to New U's violation while also requesting extensive discovery into New U's business to support that claim.  New U admits that counsel simply assumed it would be granted a lengthier extension due to the COVID-19 conditions and the Nevada Governor's directives tolling time limits for legal proceedings.

1      T1 replies with a table highlighting misstatements it believes New U has made to the

2   Court regarding the discovery at issue.  (ECF No. 61).  It renews its argument that the objections

3   should be deemed waived and expands on the relevance support for the discovery requests.

4      Fed.R.Civ.P. 33 requires the responding party to serve its answers or any objections

5   within 30 days after being served with written interrogatories.  Fed.R.Civ.P. 34 requires a party

6   upon whom document requests are served to respond in writing within 30 days after being served

7   with the requests.  The "failure to object to discovery requests within the time required constitutes

8   a waiver of any objection."  *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473

9   (9th Cir. 1992); *see also Haddad v. Interstate Management Co., LLC*, 2012 WL 398764, * 1 (D.

10   Nev. 2012) (same).

11      Further, Fed.R.Civ.P. 26(b)(1) provides for broad and liberal discovery.  "Parties may

12   obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

13   defense."  *Id.*  However, a court may limit discovery via Rule 26(c), which permits the court to

14   issue a protective order to protect a party or person from annoyance, embarrassment, oppression,

15   or undue burden or expense when the party establishes good cause.  For good cause to exist, the

16   party seeking protection bears the burden of showing specific prejudice or harm will result if no

17   protective order is granted.  *See Beckman Indus., Inc., v. Int'l. Ins. Co.*, 966 F.2d 470, 476 (9th

18   Cir. 1992).  Rule 26(c) requires more than "broad allegations of harm, unsubstantiated by specific

19   examples or articulated reasoning."  *Id*; *see also Foltz v. State Farm*, 331 F.3d 1122, 1130 (9th

20   Cir. 2003) (*citing San Jose Mercury News, Inc., v. District Court*, 187 F.3d 1096, 1102 (9th Cir.

21   1999) (holding that the party must make a particularized showing of good cause)).

22      The Supreme Court has interpreted the language of Rule 26(c) as conferring "broad

23   discretion on the trial court to decide when a protective order is appropriate and what degree of

24   protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).  Additionally, the

25   Supreme Court has acknowledged that the "trial court is in the best position to weigh fairly the

26   competing needs and interests of the parties affected by discovery.  The unique character of the

27   discovery process requires that the trial court have substantial latitude to fashion protective

28   orders."  *Id.*

1    Here, the Court examined whether the information sought by all of the challenged

2    interrogatories and requests for production was relevant to a party's claim or defense and

3    proportional to the needs of the case.  It finds that T1 has carried its burden of demonstrating

4    relevance as the three main issues that the written discovery target – alleged international/cross

5    border fees, responsibility for contract termination, and contract compliance/unclean hands –

6    relate directly to the claims and defenses of the parties.

7    For the proportionality analysis, the Court considered the importance of the issues at

8    stake, the amount in controversy, the parties' relative access to information, the parties' resources,

9    the importance of the discovery in resolving the issues, and whether the burden or expense of the

10   proposed discovery outweighs its likely benefit.  Fed.R.Civ.P. 26(b)(1); *see also Caballero v.*

11   *Bodega Latina Corp*., 2017 WL 3174931 at *2 (D. Nev. July 25, 2017).  Ultimately, the Court

12   finds supplementation by New U is necessary, but will uphold some of New U's objections to the

13   requests for production as some of the requests are not proportional to the needs of the case.

14   The Court will not deem New U's objections to be waived.  It understands that counsel for

15   New U was under the impression that Nevada Governor's Directive tolled the deadline to respond

16   and thus, New U believes its responses to be timely.  Further, the Court is aware of the conditions

17   that the COVID-19 pandemic has put on counsel to operate during a global pandemic.  While

18   New U's counsel should have communicated more clearly with T1's counsel on the time to

19   respond, the Court finds that waiving the objections is not appropriate in these particular

20   circumstances.  Indeed, discovery has not been impeded by a few weeks delay in serving

21   responses; no depositions were claimed to have been rescheduled.  This breakdown in

22   communication between counsel, while not surprising given the history of this case thus far, is not

23   enough to warrant waiving substantive objections.

24   However, New U is under the mistaken assumption that simply asserting objections –

25   even boilerplate ones - means that it does not need to provide substantive responses.  The Court

26   understands that New U has concerns about the time frame requested by T1 in interrogatory no.

27   24.  However, simply because the termination occurred in November 2018 and the interrogatory

28   requests investigation information through 2020, does not mean that the request is irrelevant.  The

Court also understands that New U denied a response because it believes the interrogatory contains three subparts. However, who, what, and when inquiries into the investigation are sufficiently subsumed to permit the interrogatory to stand. There is no greater burden on New U to identify who and when. Indeed, if the Court were to limit this interrogatory to only what was the investigation and deny the who and when parts, then T1 would be left to ask the who and when parts during a deposition. This seems to make discovery unnecessarily slower, which does not promote the spirit and intent of Rule 1. As such, the Court will require New U to supplement its response to interrogatory no. 24.

As for documents requests nos. 1-3, 9-10, 12, 17-18, 24-25, 27, 31, 42-43, 49, 56, 61-62, 68-69, New U represents that it has produced all responsive documents. The Court cannot compel something that does not exists. To the extent that T1 learns of any specific documents it believes that New U has not produced that are responsive to these requests, then it may pursue the appropriate request for relief at that time, including sanctions.

Additionally, the Court finds that New U's proportionality challenge to requests nos. 12, 40, 42-43, 49, 56, and 61-62 to be valid for the most part. The requests encompass a broad range of information, such as all customer notes, all checkout pages, all advertising materials, all contracts, all studies concerning any New U Life product or any ingredient, which the Court simply cannot justify as proportional to the needs of this case at the present time. T1 may move forward to explore such topics in general during depositions, but should be extremely mindful to try harder to tailor them to this specific case. For example, the Court will accept T1's proposed tailoring of document request no. 12 to be only checkout pages used to sell the products sold using T1 payments merchant account provided to New U Life with the definition provided by T1 in the August 18, 2020 letter. New U shall provide a supplement to request no. 12 as narrowed. T1 may also move forward to obtain information that is accessible from third parties or advertising and other information readily accessible on the internet.

The trade secret and confidential business information objection raised by New U was too vague for the Court to consider at this point. New U should be mindful that it should engage with T1 to put a protective order in place to govern the exchange of discovery documents. The Court

will not uphold New U's decision to withhold documents simply on that vague objection alone. As it was unable to determine if there were any specific documents upheld solely on the trade secrets/confidentiality objection, it is unable to compel any specific documents. Therefore, the Court will only compel a limited supplement to New U's responses.

Finally, the Court will also require New U to clarify the documents cited in its response to request for documents nos. 72-73. T1 claims that New U cited hundreds of pages that had nothing to do with the requests. It is entitled to explore this in a deposition, but to request some sort of interrogatory explanation of how the documents counsel identified relate to the requests is not appropriate. As a result, the Court will deny this portion of the Motion to Compel.

The Court feels compelled to remind the parties discovery gamesmanship in which one party attempts to hide-the-ball in contravention of the Federal Rules of Civil Procedure will not be tolerated in this Court. The Court is well aware that the legal practice may pressure counsel to take untenable positions due to unreasonable client views. Nevertheless, compromising one's reputation before the Court over written discovery is unwise. Counsel should make every effort to practice civility and avoid wasting valuable court resources on discovery disputes that should have been resolved via a good faith meet and confer. Ultimately, the Motion is granted in part and denied in part as outlined above.

### d. New U's Motion to Extend (ECF No. 50)

New U seeks an extension to the outstanding discovery deadlines in order to complete discovery on the additional claims for relief and defendants in the counterclaim. (ECF No. 50). It intends to serve additional written discovery, retain an expert, and complete depositions. New U contends that it has acted diligently in pursuing discovery so far given the discovery disputes the parties have encountered and no prejudice will result to T1.

T1 responds that it is concerned about a conflict of interest, which is separately briefed, and granting an extension on a counterclaim that has not been accepted is premature. (ECF No. 60).

The Court finds that New U has stated good cause to extend the outstanding discovery deadlines. T1 is undoubtably aware of the lenient good cause standard in which discovery

extensions are subject to here.  Further, the Court finds it appropriate to extend the current schedule given that it is permitting the counterclaims to proceed.  As such, it will grant the Motion and discovery shall be conducted as follows:

- Discovery cutoff: May 28, 2021
- Initial expert disclosures: June 28, 2021
- Rebuttal expert disclosures: July 28, 2021
- Dispositive motions: July 19, 2021
- Joint pretrial order: August 19, 2021

**e. T1's Motion for Protective Order (ECF No. 62)**

TI seeks a protective order with respect to three Rule 45 subpoenas that New U served on third parties – MasterCard, Visa, and Priority Payment Systems.  (ECF No. 62).  It argues there are three reasons to enter a protective order precluding the discovery sought by the subpoenas: (1) The subpoena requests are not relevant to any claim or defense in this case as information about thousands of merchants and their transactions have nothing to do with this litigation; (2) The subpoena requests are not proportional to the needs of this case as they seek millions of records containing confidential and proprietary information about T1's customers when discovery is nearing a close; (3) The subpoena requests target trade secret and confidential business information of T1, which it depends on to maintain a competitive edge.  From Mastercard, T1 claims that New U seeks all documents related to communications between it and any customer of T1.  From Visa, T1 claims that New U does not set forth a time frame for the documents and also seeks all customer communications.  From Priority Payment, T1 claims that New U likewise does not provide a temporal limit and requests all originating bank account documents from which it ever received funds for T1.

New U responds that it seeks documents that would confirm that T1 is a fake payment facilitator that was operating without a proper registration, which relates to the issue of whether the parties contract was void as an illegal contract.  It also counters T1's arguments as follows: (1) The requests are relevant to New U's defense to the original contract claims as they seek registration records; (2) The requests seek customers that are limited to member financial

1   institutions of Visa and Mastercard, not the 8,000 customers of T1; (3) New U offered to enter

2   into a stipulated protective order like the model one for the Northern District of California.  New

3   U believes that T1 illegally aggregates merchant transactions, a form of credit laundering and

4   rather than opening a merchant account in New U's name, T1 processed the transactions under an

5   account held in T1's own name.

6        T1 replies that this case involves discrete issues and New U has failed to tie the subpoenas

7   to any claim or defense.  (ECF No. 77).  It contends that the subpoenas are targeted to the

8   proposed counterclaims, which was not permitted at the time T1 filed its Reply.  Further, T1

9   argues that the Priority Payment Systems subpoena is only intended to seek confidential and

10  proprietary information about T1's internal operations.  As to the Visa and Mastercard subpoenas,

11  T1 reiterates its objection to the time frame sought – back to 2016 – when it claims this case

12  concerns a 3 week contractual payment processing relationship in 2018.  T1 contends that in

13  addition to the documents not being relevant, they are also overly burdensome for T1 because it

14  would require T1's attorneys to engage in document review costs that would exceed the value of

15  the case.

16       Federal Rule of Civil Procedure 26(b)(1) provides for broad and liberal discovery.

17  "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's

18  claim or defense and proportional to the needs of the case."  *Id.*  The court may limit discovery if

19  it is unreasonably cumulative or duplicative, or can be obtained from some other source that is

20  more convenient, less burdensome, or less expensive . . . [or] the proposed discovery is outside

21  the scope permitted by Rule 26(b)(1).  Rule 26(b)(2)(C)(i-iii).  Further, a court may limit

22  discovery via Rule 26(c), which permits the court to issue a protective order to protect a party or

23  person from annoyance, embarrassment, oppression, or undue burden or expense when the party

24  establishes good cause.  When the discovery at issue is a subpoena on a nonparty, Rule 45

25  governs.  "It is well established that the scope of discovery under a subpoena issued pursuant to

26  Rule 45 is the same as the scope of discovery allowed under Rule 26(b)(1)."  *Painters Joint*

27  *Committee v. Employee Painters Trust Health & Welfare Fund*, 2011 WL 4573349 at *5 (D. Nev.

28  Sept. 29, 2011).

"[A] party lacks standing under Fed. R. Civ. P. 45[(d)(3)(A)] to challenge a subpoena issued to a non-party unless the party claims a personal right or privilege with respect to the documents requested in the subpoena." *G.K. Las Vegas Ltd. Partnership v. Simon Property Group, Inc*., 2007 WL 119148 at* 4 (D. Nev. Jan. 9, 2007); *compare In re Rhodes Companies, LLC*, 475 B.R. 733, 740 (D. Nev. Apr. 30, 2012) (declining to adopt the "personal right or privilege" standing rule for motion to quash subpoenas). "A party's objection that the subpoena issued to the non-party seeks irrelevant information or imposes an undue burden on the non-party are not grounds on which a party has standing to move to quash a subpoena issued to a non-party, especially where the non-party, itself, has not objected." *G.K. Las Vegas Ltd. Partnership*, 2007 WL 119148 at* 4. "A party can, however, move for a protective order in regard to a subpoena issued to a non-party if it believes its own interest is jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." Fed.R.Civ.P. 26(c)(1); *see also First Am. Title Ins. Co. v. Commerce Assocs., LLC*, 2017 WL 53704, at *1 (D. Nev. Jan. 3, 2017).

First, the Court finds that T1 has standing to challenge the subpoenas as they concern its registration and financial records. Second, the Court finds that New U's three Rule 45 subpoenas seek information relevant to New U's defense that the contract was illegal. When a request is overly broad on its face or when relevancy is not readily apparent . . . the party seeking discovery has the burden to show the relevancy of the request." *McCall v. State Farm Mut. Auto. Ins. Co*., 2017 WL 3174914, at *6 (D. Nev. July 26, 2017) (internal citations omitted). New U has satisfied this burden in showing how the registration records relate to its argument that T1 operated without a proper financial registration. Importantly, the 2015 amendments to Rule 26 deleted the phrase "reasonably calculated to lead to the discovery of admissible evidence" and replaced it with language that better represents the phrase's original intent: "Information within this scope of discovery need not be admissible in evidence to be discoverable." Rule 26(b)(1). So, admissibility is not an issue here and under the current scope of discovery, the Court is satisfied that the subpoenas are relevant to New U's defense.

Third, the three subpoenas are proportional to the needs of this case as T1 has not shown that the third parties would be producing an overly burdensome amount of records; rather, they all appear to be electronic records in a searchable format with Mastercard indicating it is a few screenshots.  Further, T1 appears to believe that the proportionality analysis should solely consider how much time its own attorneys would need to spend on reviewing the documents. While it is unclear why its attorneys would need to spend an excessive amount of time reviewing a few screenshots, the Court also notes that none of the third parties have raised any objection that the records would be overly burdensome to produce.  That is the focus of the inquiry; how efficient T1's attorneys are at processing this new information is up to T1.  Moreover, T1 acknowledges that Mastercard intends on responding with its own objections.  As Mastercard has not filed any motion before the Court claiming the records are burdensome, it is entitled to respond with its own objections.

Fourth, T1 also asserts that it has a privacy interest in these financial/registration records and maintains they are confidential in nature and/or trade secrets.  However, while this may weigh towards standing to object to the third-party subpoenas, a privacy or confidentiality objection is easily resolved by the parties submitting a stipulated protective order for the court's approval.  New U has represented that it offered to treat these records as confidential and stipulate to a protective order and that T1 has rejected this offer.  Therefore, the Court does not find any privacy or confidential concerns warrant quashing the subpoenas at issue.  It will deny the Motion for Protective Order (ECF No. 62).

**f.   T1's Motion to Disqualify Counsel (ECF No. 64)**

T1 moves to disqualify New U's counsel – Bradley Cebeci – along with the law firms of Brown Brown & Premsrirut and Rome & Associations, A.P.C.  (ECF No. 64).  Cebeci previously worked for the Law Offices of Thomas F. Monroe and in fact, represented T1 during that time. T1 claims that as Cebeci is now appearing directly adverse to T1, and T1 claims because he has retained work product he generated for T1, he must be disqualified.  Further, T1 argues that the disqualification must be imputed to his law firm and his co-counsel's law firm as Cebeci appears to have shared T1's confidential and privileged information with them.

New U responds that this is a tactical maneuver to deprive New U of its chosen counsel, only filed after New U has sought leave to file its counterclaims (ECF No. 73).  It contends that Cebeci previously performed discrete assignments for the Monroe Firm in connection with a 2 month long representation of T1 back in 2016.  It highlights that the representation ended before T1 lost its registration as a payment facilitator in 2017.  As such, New U argues that the prior matters were not substantially related and Cebeci has not misused confidential information. Cebeci's co-counsel join in all of the arguments articulated in the Response.  (ECF No. 75).

T1 replies that New U states erroneous legal standards and the Court should draw an adverse inference against Cebeci based on his refusal to provide a complete copy of his file to T1. (ECF No. 79).  It argues that the substantial relationship test has been satisfied and the Court should presume that Cebeci has confidential information related to TI that is being used to advance New U's claims in this action.  T1 believes that Cebeci still possesses documents and information relevant to his prior representation of T1 and his failure to produce them should result in an adverse inference.  New U requested to be able to respond to this new adverse inference argument.  (ECF No. 80).  As addressed below, the Court does not need further argument on this topic as it does not find that the substantial relationship test is satisfied and therefore, does not reach the confidential information step.

Whether an attorney should be disqualified is an issue of state law.  *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000).  The Court looks to the Nevada Rules of Professional Conduct, which provide that: [a] A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.  *See* NRPC 1.9.  NRPC 1.10(a) states, "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.9, or 2.2, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm."  An exception exists if the lawyer (i) did not have a substantial role in or primary

responsibility for the matter that causes the disqualification under Rule 1.9, (ii) is timely screened

from any participation in the matter and is apportioned no part of the fee therefrom, and (iii)

timely written notice is given to the former client.  NRPC 1.10(e).  Pursuant to NRPC 1.10(a), "an

attorney's disqualification under RPC 1.9 is imputed to all other attorneys in that disqualified

attorney's law firm."  *New Horizon Kids v. Eighth Jud. Dist. Ct.*, 392 P.3d 166, 169 (Nev. 2017).

The burden of proof under Nevada law is that the party seeking disqualification must

establish "(1) that it had an attorney-client relationship with the lawyer, (2) that the former matter

and the current matter are substantially related, and (3) that the current representation is adverse

to the party seeking disqualification."  *Nevada Yellow Cab Corp. v. Eighth Jud. Dist. Ct*., 123

Nev. 44, 50 (2007).

Further, there is no doubt that having been admitted to practice in this Court on a pro hac

vice basis, Cebeci is bound by Nevada law.  Indeed, Local Rule IA 11-7 (a) provides that, "[a]n

attorney admitted to practice under any of these rules must adhere to the standards of conduct

prescribed by the Model Rules of Professional Conduct as adopted and amended from time to

time by the Supreme Court of Nevada, except as these standards may be modified by this court."

Additionally, under its inherent power, a court may sanction an attorney or party, "by the

control necessarily vested in courts to manage their own affairs so as to achieve the orderly and

expeditious disposition of cases."  *Chambers v. NASCO, Inc*., 501 U.S. 32, 43-45, L. Ed. 2d 27

(1991).  In doing so, the Court is guided by Federal Rule of Civil Procedure 1, which provides

that the Rules "should be construed, administered, and employed by the court and the parties to

secure the just, speedy, and inexpensive determination of every action and proceeding."  The

Court's inherent power, "also entitles the Court to deny a disqualification motion on condition

that the attorney or firm in question comply with certain limitations.  This is because a court's

authority to disqualify an attorney or craft appropriate relief to punish or deter attorney

misconduct derives from the court's equitable powers.  *See* Geoffrey C. Hazard, Jr. & W. William

Hodes, The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct § 4.7,

at 4-22 (Aspen, 3d ed. 2007) ("Former clients in particular often pursue motions to disqualify

their former counsel from adverse representation.  Such motions . . . invoke the equitable powers

1   of the court, and when successful result in an order that is in effect an injunction.  Hence . . . a

2   motion for disqualification is governed by such equitable principles as waiver, estoppel, latches,

3   'undue hardship' and 'a balancing of the equities.'  This helps explain why courts sometimes

4   deny relief on motion for disqualification, even when there is clear proof of violation of a rule of

5   professional conduct.").

6          Moreover, disqualification motions are "subjected to particularly strict judicial scrutiny."

7   *Shurance v. Planning Control Int'l, Inc*., 839 F.2d 1347, 1348 (9th Cir. 1988) (quoting *Optyl*

8   *Eyewear Fashion Int'l Corp. v. Style Co*s., 760 F.2d 1045, 1050 (9th Cir. 1985).

9   "Disqualification of counsel is a drastic measure which courts should hesitate to impose except

10  when absolutely necessary."  *FLS Trans. Servs., Inc. v. Casillas*, 2017 WL 6043611, 3 (D. Nev.

11  Dec. 6, 2017).  The party seeking disqualification has a "high standard of proof to meet in order

12  to prove that counsel should be disqualified."  *Id*. (internal quotation omitted).  Close calls are

13  decided in favor of disqualification.  *Brown v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 14 P.3d

14  1266, 1270 (Nev. 2000); (However, "parties should not be allowed to misuse motions for

15  disqualification as instruments of harassment or delay.").  The Court must balance the competing

16  interests of a parties' right to be represented by counsel of their choice, and the "right to be free

17  from the risk of even inadvertent disclosure of confidential information."  *Id*.

18         The Court applies the above rules of law to the facts of this particular case.  As the parties

19  are aware, Judge Ferenbach already address substantially the same motion in the related case – *T1*

20  *Payments, LLC v. Beyond Wealth PTE LLC*, 2:20-cv-1405-JCM-VCF (ECF No. 151).  The

21  undersigned agrees with Judge Ferenbach's analysis and finds the same result is appropriate in

22  this action.  T1 has met its burden to show that an attorney-client relationship with Cebeci existed

23  and that the current representation is averse to T1.  The litigation matters that Cebeci worked on

24  while employed at the Monroe firm in 2016, however, are not substantially related given that the

25  issues in this case are centered around the termination of the parties' contract in 2018 and the

26  counterclaims regarding T1's alleged lack of registration as a payment facilitator.  This is not a

27  close case since Cebeci advised T1 on discrete compliance issues and in 2016 T1 allegedly

28  complied with payment processing rules.  Indeed, Cebeci lists the discrete assignments he

1   performed over two months in 2016 related to the *Dermaktive* action and *Gilling* action.  (ECF

2   No. 73, pp. 9-10, lns. 25-2).  Just like not every personal injury action is the same, not every fraud

3   or contract dispute is the same. *See Stevens v. WalMart Stores, Inc.*, 2018 WL 2766876, at *9 (D.

4   Nev. June 8, 2018) ("All personal injury tort claims are not substantially related to all other

5   personal injury tort claims.").  T1 has not sustained its burden to show that the litigation matters

6   that Cebeci worked on for T1 in 2016 are substantially related given the significant changed

7   circumstances in T1's alleged compliance to a different processing structure with different

8   processing partners.

9          Nevertheless, the Court finds that T1 has shown that Cebeci is attacking his own work

10  product based on the bare allegations in the complaint since Cebeci helped draft the merchant

11  agreement for T1 in 2016.  Attorneys are prohibited from attacking their own work product. See

12  Restatement (Third) of the Law Governing Lawyers §132(1) & cmt. d(ii) (2000) (prohibiting

13  attorneys from attacking their own prior work even if no confidential information would be

14  compromised in doing so).  The Court thus finds that Cebeci's actions here are unethical, but the

15  Court retains broad discretion regarding whether to disqualify him or to impose lesser sanctions.

16  "The discretion courts have to determine whether the specific facts of a case warrant a sanction

17  short of disqualification is broad . . . it is not obligated to disqualify that lawyer merely because

18  he has run afoul of the applicable ethical rules.  The court is encouraged instead to examine the

19  specific facts and circumstances peculiar to the individual case to decide whether disqualification,

20  or some lesser sanction, would be an appropriate remedy."  *UMG Recordings, Inc. v. MySpace,*

21  *Inc.*, 526 F. Supp. 2d 1046, 1062 (C.D. Cal. 2007) (citing to Richard E. Flamm, Lawyer

22  Disqualification: Conflicts of Interest and Other Bases § 23.1 at 443–45 (Banks and Jordan,

23  2003)).

24         Since the 2016 litigation is not substantially related, T1's right to be free from the risk of

25  even inadvertent disclosure of confidential information is not strongly implicated here.  Applying

26  strict scrutiny, the Court should not deprive New U of counsel with specific knowledge of

27  payment processing law in this case unless it is necessary.  Indeed, as Judge Ferenbach points out,

28  T1 never moved for disqualification in the related case: *T1 Payments LLC v. Sarah Grauert et al.*,

1    Case No. 2:20-cv-411-KJD-VCF.  Moreover, this Court's ruling is consistent with Judge

2    Ferenbach's Order in 2:20-cv-1405-JCM-VCF (ECF No. 151).  In fact, the issues in that case are

3    not much different from the issues in this case.

4         As sanctions, the Court recommends admonishing Cebeci and revoking Cebeci's privilege

5    to practice pro hac vice in this case. The Court also recommends imposing conditions upon Rome

6    & Associates, the Court should order the firm to: (1) screen Cebeci from this case going forward

7    to avoid future conflicts or issues from arising in this litigation, and (2) certify that Cebeci has

8    been screened from this case and that he will not share in any fees going forward by filing a

9    notice with this Court regarding the screening.  The screening should comply with Nevada law.

10   Screening Cebeci from this case should not be difficult for Rome & Associates since Cebeci lives

11   in Guatemala and does not share an office with his colleagues.  Since the Court finds that

12   disqualification of Cebeci is not necessary here given that sanctions are available, the Court also

13   recommends denying T1's request to impute disqualification to Cebeci's law firm Rome &

14   Associates and co-counsel.  Balancing the equities, T1 has not met its heavy burden to disqualify

15   counsel.  Accordingly, the Court recommends that T1's Motion (ECF No. 64) be granted in part

16   only to the extent that Cebeci should be sanctioned and conditions should be imposed upon Rome

17   & Associate's representation of New U going forward.

18          **g.  New U's Motion to Compel (ECF No. 72)**

19        New U seeks supplemental responses to its written discovery served on April 27, 2020, to

20   which T1 provided responses on July 2, 2020.  (ECF No. 72).  It contends that T1 failed to state

21   whether any responsive documents were withheld, after asserting objections, to RFP Nos. 2-4, 7-

22   12, 15-17, 32-33, 43-44, 46-56, 68-65, and 68.  New U also claims that T1 failed to provide a

23   privilege log and asserted boilerplate objections.  For example, RFP Nos. 1, 6-11, 18, 33, 40, 43,

24   47-56, 58, 63-65, and 68 all assert the same objection without stating its applicability to the

25   specific request.  New U argues that T1 asserted a relevance objection despite the requests

26   seeking information on T1's ownership and organization, contracts, services and marketing, prior

27   complaints, related entities, financial information, regulatory compliance, and proof of service.

28   Further, New U contends that T1 responded that it would supplement its responses, but nothing

1    has been received to date.  New U also seeks to compel supplementary response to a narrow set of

2    interrogatories and admissions and requests its attorney fees.

3         T1 responds that the Motion should be denied because New U failed to meet and confer in

4    good faith prior to filing the Motion, does not include a certificate that complies with the Local

5    Rules, and did not uphold the agreement of counsel to narrow some of the issues.  (ECF No. 76).

6    It recites its relevance objection, contends that no privilege log is needed, and seeks attorneys fees

7    for having to respond to this Motion.

8         New U replies that it met and conferred in good faith, the requests are relevant, and T1 is

9    not entitled to attorneys fees. (ECF No. 82).

10        The Court already set forth the applicable legal standards related to a motion to compel

11   above.  While the Court is aware that a large number of discovery requests are raised in the

12   Motion, there is still no excuse for New U's failure to provide the specific text of each discovery

13   request and response along with the meet and confer result.  Without such information as required

14   by Local Rule 26-6(b-c), the Court is forced to dig through the briefings to decide the dispute.

15   This is exactly why Local Rule 26-6 was written and adopted.  As such, the Court agrees with T1

16   that this Motion is procedurally improper.  Nevertheless, in an effort to move this case along, the

17   Court will get to the merits of the dispute, but it will not afford this same leniency to any future

18   discovery disputes that fail to comply with the Local Rules.

19        Here, the Court finds that New U has satisfied the relevancy prong as previously defined;

20   indeed, by now, all attorneys should know the proper definition of relevance under the 2015

21   amendments to the Federal Rules of Civil Procedure.  The information requested is relevant to the

22   claims and defenses in this part; T1 does not have to like the scope of discovery, especially with

23   the counterclaims now in play, but it cannot simply refuse to respond to requests within that broad

24   scope.  To the extent that T1 withheld information solely based on a relevance objection, then it

25   shall supplement its response.  The Court denies to compel any further response to any of the

26   RFPs to the extent that T1 raised a separate objection.  As previously stated, New U failed to

27   provide the text of the request, the response, and the meet and confer effort for each request and

28

thus, the Court will not dig through each objection to determine its validity or invalidity when New U fails to meet its burden.

Further, the Court will not require T1 to supplement with a privilege log and identify all withheld documents with respect to each RFP. T1 has represented that it only asserted a privilege objection to RFP No. 14 and after a search, found no responsive documents. So, there is no privilege log to compel. The Court also accepts T1's representation that they never promised any future supplement and notes that T1 is under the affirmative duty to supplement regardless, as set out in Fed.R.Civ.P. 26(e), to extent there are any further documents to be produced in discovery that would need to be admissible for use at trial.

The Court will not require T1 to supplement its responses to Rog Nos. 6, 8 and 20. New U can follow up in depositions on the responses regarding marketing clients, the information regarding prior litigation is readily available via a public search and not at all proportional to the needs of this case as it was not limited in time frame or geographically, and third party subpoenas are already served seeking account fund information.

For the RFA Nos. 4, 6 and 7, T1 will be provided with one opportunity to substantively respond to these requests. Again, simply dodging responding because T1 believes it is not relevant is not permissible. These are straightforward requests that again fall within the relevant and proportional framework that entitle New U to a direct response. As for New U's request for fees, the Court declines to grant it as the Court only grants in part and denies in part the Motion to Compel (ECF No. 72) as outlined above. Likewise, the Court declines to grant T1's request for attorneys fees.

### h. T1's Motion for Leave to File Excess Pages (ECF No. 78)

T1 requests that the Court permit it excess pages to the reply brief submitted in connection with the motion to disqualify counsel (ECF No. 79). (ECF No. 78). It claims that 26 pages is needed for the reply given the volume of material to address and significance of the issues. New U responds that the 12 page limit should still apply because T1 should have submitted their request for excess pages prior to filing the reply brief and the excess pages are double the limit. (ECF No. 80). New U also claims that T1 improperly raised a new argument regarding adverse

1    inferences for the first time in the reply brief and it should be permitted to respond to that new

2    argument.  T1 replies that it is not required to obtain leave in advance of filing the brief, but

3    rather, before the deadline of the brief expires.  (ECF No. 83).  It also contends that it did not

4    know of the adverse inference argument when it filed the motion and a sur-reply is not necessary.

5         The Court largely agrees that requests for excess pages are typically indicative of an

6    attorneys' inability to edit their writing to a concise argument.  However, it declines to cut-off

7    meritorious arguments in favor of enforcing a procedural safeguard as that would not promote

8    deciding a matter on the merits.  It will permit T1's reply brief and consider all of the arguments

9    of the parties with respect to the Motion to Disqualify.  Therefore, the Court grants T1's Motion

10   for Excess Pages (ECF No. 78) and declines to permit a sur-reply as it does not need further

11   argument from the parties to understand their positions.

## III.    CONCLUSION

### ORDER

**IT IS THEREFORE ORDERED** that:

- Defendant's Motion to File First Amended Counterclaim (ECF No. 42) is **granted**.  It shall file and serve the amended pleading in accordance with LR 15-1(b).

- Plaintiff's Motion to Vacate Order ECF No. 39 (ECF No. 47) is **denied**.

- Plaintiff's Motion to Compel Discovery (ECF No. 49) is **granted in part and denied in part**.

- Defendant's Motion to Extend (ECF No. 50) is **granted**.

- Plaintiff's Motion for Protective Order (ECF No. 62) is **denied**.

- Defendant's Motion to Compel (ECF No. 72) is **granted in part and denied in part**.

- Plaintiff's Motion for Leave to File Excess Pages (ECF No. 78) is **granted**.

### RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Plaintiff's Motion to Disqualify Counsel (ECF No. 64) be **granted in part and denied in part**.  The District Judge should admonish and

sanction attorney Cebeci.  He should revoke Cebeci's privilege to practice pro hac vice in this case.  The District Judge should impose conditions upon Cebeci's firm Rome & Associates and order it to (1) screen Cebeci from this case going forward, and (2) certify that Cebeci has been screened from this case and that he will not share in any fees going forward by filing a notice with this Court regarding the screening.

## NOTICE

This report and recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1).  A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: January 14, 2021

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE