# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

T1 PAYMENTS LLC,

     Plaintiff

v.

NEW U LIFE CORPORATION,

     Defendant

Case No.: 2:19-cv-01816-APG-DJA

**Order Adopting Report and Recommendation**

[ECF No. 84]

     T1 Payments LLC and New U Life Corporation entered into a Merchant Services Application and Card Payment Processing Agreement (collectively, the CPPA) so that T1 would process credit card transactions for New U. This lawsuit addresses who ended the contract, who is entitled to the funds held by T1, and whether the contract involved illegality or fraud because T1 was allegedly not registered as a payment facilitator at the time. T1 moved to disqualify New U's attorney Bradley Cebeci, his firm Rome & Associates, A.P.C., and his local counsel Brown Brown & Premsrirut (BB&P). T1 argued that Cebeci previously represented T1 in connection with two similar lawsuits and helped draft T1's template merchant agreement. T1 contends this conflict of interest should be imputed to his firm and BB&P.

     Magistrate Judge Albregts recommended that I grant in part T1's motion to disqualify. He determined that the prior litigation Cebeci worked on was not substantially similar to matters in this case, but that Cebeci acted unethically by attacking his own work product. Judge Albregts recommended I revoke Cebeci's pro hac vice status and have his firm screen him from this case, but that I not disqualify his firm or BB&P. The recommendation is identical to the one made by Magistrate Judge Ferenbach for a substantially similar motion in *T1 Payments, LLC v. Beyond*

1   *Wealth PTE LLC*, 2:20-cv-1405-JCM-VCF (ECF No. 151), which Judge Mahan has since

2   adopted (ECF No. 165).

3        T1 objects to the recommendation, arguing that Cebeci's work for T1 is substantially

4   similar to the present case and that all of New U's attorneys should be disqualified as a result.

5   ECF No. 89.  Cebeci and Rome & Associates also object, arguing that no sanctions are

6   warranted because New U's counterclaims do not facially attack the template document Cebeci

7   helped draft. ECF No. 90.

8        The parties are familiar with the facts, so I repeat them here only where necessary to

9   resolve the objections.  I have conducted a de novo review of the issues under Local Rule IB 3-

10   2.[1]  I agree with Judge Albregts' recommendations but based on a somewhat different rationale.

11        Whether a lawyer should be disqualified is a question of state law. *In re Cnty. of Los*

12   *Angele*s, 223 F.3d 990, 995 (9th Cir. 2000).  Under Nevada law, "[d]istrict courts are responsible

13   for controlling the conduct of attorneys practicing before them, and have broad discretion in

14   determining whether disqualification is required in a particular case." *Brown v. Eighth Jud. Dist.*

15   *Ct. ex rel. Cnty. of Clark*, 14 P.3d 1266, 1269 (Nev. 2000).  Additionally, because Cebeci is

16   appearing in this case pro hac vice, he must "adhere to the standards of conduct" prescribed by

17   the Nevada Rules of Professional Conduct (NRPC). LR IA 11-7(a).

18        A party moving to disqualify opposing counsel "must first establish at least a reasonable

19   possibility that some specifically identifiable impropriety did in fact occur, and then must also

20   establish that the likelihood of public suspicion or obloquy outweighs the social interests which

21

22   _____

23   [1] Because a motion to disqualify is a pretrial order, Judge Albregts had the authority to issue an order, which I would have reviewed under the "clearly erroneous or contrary to law" standard of review. LR IB 3-1; 28 U.S.C. § 636(b)(1)(A).  But because he issued a Report and Recommendation instead, I review it de novo. LR IB 3-2.

will be served by a lawyer's continued participation in a particular case." *Brown*, 14 P.3d at 1270 (quotation omitted).

### A. Substantially Similar Matters

A conflict of interest exists if a lawyer who formerly represented a client in a matter represents a new client in the "same or a substantially related matter," and that representation is materially adverse to the former client's interests. NRPC 1.9(a); *see also Nev. Yellow Cab Corp. v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 152 P.3d 737, 741 (Nev. 2007).  When a lawyer is conflicted under NRPC 1.9, the conflict is imputed to the lawyer's firm. NRPC 1.10(a).

The parties do not object to Judge Albregts' determination that Cebeci previously represented T1 and that his representation of New U in this matter is materially adverse to T1's interests. ECF No. 84 at 17.  They dispute whether Cebeci's work for T1 while he was employed by the Law Offices of Theodore F. Monroe (TFM Law) is substantially related to this case.

To determine whether two representations are substantially related, a court must:

(1) [M]ake a factual determination concerning the scope of the former representation, (2) evaluate whether it is reasonable to infer that the confidential information allegedly given would have been given to a lawyer representing a client in those matters, and (3) determine whether that information is relevant to the issues raised in the present litigation.

*Nev. Yellow Cab Corp.*, 152 P.3d at 742 (quoting *Waid v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 119 P.3d 1219, 1223 (Nev. 2005)).  I should not "inquire into whether an attorney actually acquired confidential information in the prior representation which is related to the current representation." *Waid*, 119 P.3d at 1222 (quotation omitted).  Instead, I should "undertake a realistic appraisal of whether confidences might have been disclosed in the prior matter that will be harmful to the client in the later matter." *Id.* at 1222-23.

1    Judge Albregts determined that Cebeci's work for T1 in 2016 related to the *Gilling*[2] and

2  *DermAktive*[3] litigation, and his work in drafting the template merchant agreement that T1 later

3  used with New U, do not constitute substantially similar matters under NRPC 1.9(a).  He

4  reasoned that the present case is about the termination of the parties' contract in 2018 and

5  whether T1 should have been registered as a payment facilitator. ECF No. 84 at 17.  He felt these

6  issues are not substantially similar to Cebeci's prior work for T1 because Cebeci worked on only

7  discrete compliance issues for the *Gilling* and *DermAktive* litigation and T1 was a payment

8  facilitator at that time. *Id.*

9    I disagree because, in my view, Cebeci's prior litigation work for T1 and his drafting of

10  the merchant agreement are substantially similar to matters in this action.  For the *DermAktive*

11  and *Gillings* cases, Cebeci was personally involved in the litigation, which included researching

12  procedural issues and drafting an answer. ECF No. 73 at 32.  Without inquiring into Cebeci's

13  actual exposure to confidential information, it is reasonable to infer that Cebeci received

14  confidential information during his work on those matters. *See Nev. Yellow Cab Corp.*, 152 P.3d

15  at 742; *see also* Restatement (Third) Law Governing Lawyers § 132 cmt. d(iii) ("When the prior

16  matter involved litigation, it will be conclusively presumed that the lawyer obtained confidential

17  information about the issues involved in the litigation.").

18    The information Cebeci is presumed to have received those cases is relevant to this case.

19  New U asserts a Racketeer Influenced and Corrupt Organizations (RICO) Act counterclaim that

20  contends T1's conduct is part of a pattern and practice of racketeering.  New U alleges: "At least

21  seven other lawsuits have been filed against T1 in the last four years alleging T1's

22

23  [2] *Gilling Investments, LLC v. Kasdon*, No. A-16-732103-C (Nev. 8th Jud. Dist. Ct.).
  [3] *DermAktive, LLC v. Atlantic–Pacific Payment Processing Systems, Inc.*, No. A-16-737420-B (Nev. 8th Jud. Dist. Ct.).

misappropriation of funds belonging to its merchants through acts of fraud, theft, and embezzlement." ECF No. 85 at 41-42.  New U includes the *Beyond Wealth* case in a footnote to support this statement. *Id.* at 42 n.2.  For that nearly identical RICO counterclaim filed in the *Beyond Wealth* action, Beyond Wealth's counsel, which is the same counsel that represents New U here, lists the *DermAktive* litigation as part of that pattern and practice. ECF No. 69-4 at 39 n.1.  Although New U omits *DermAktive* in its First Amended Counterclaim (FACC)—likely to avoid further issues with Cebeci causing conflicts of interest—its inclusion in the *Beyond Wealth* case shows that New U's action is substantially similar to *DermAktive*.[4] ECF No. 44 at n.2; *see also* ECF No. 85 at 42 n.2.

The breach of contract aspect of this case is substantially similar to the *DermAktive* and *Gilling* cases.  While they may involve different processing structures, both the cases Cebeci worked on for T1 and the present case involve T1 purportedly targeting high risk businesses and keeping funds after high numbers of chargebacks. *Compare* ECF Nos. 68-1 at 8 (*Gilling*); 66-1 at 5 (*DermAktive*), *with* ECF No. 85 at 13-14 (New U's FACC).  Because Cebeci's work in the *Gilling* and *DermAktive* cases may have involved confidential information that could be relevant to New U's counterclaims and defenses, it is substantially related to this case.  Therefore, all the elements for a conflict under NRCP 1.9(a) are met.

Cebeci's work drafting the merchant agreement template for T1 also constitutes a substantially similar matter. *See* ECF Nos. 65-6 at 22-24 (showing Cebeci's redline edits of T1's CPPA); 73 at 32 (explaining that Cebeci "revis[ed] T1's merchant agreement by cleaning up the

---

[4] New U cannot dodge this conflict by omitting *DermAktive* in its FACC.  New U still names the *Beyond Wealth* and *Vantiv* litigation, and both of those cases name the *DermAktive* litigation as evidence of T1's pattern of wrongdoing. ECF Nos. 69-4 at 39 n.1; Complaint, *Vantiv, LLC, v. T1 Payments LLC*, No. 1:17-cv-00164-SJD at ECF Nos. 1 at 1; 1-4 at 2 (citing and including as an exhibit the FACC from the *DermAktive* action).

language and proofreading Mr. Monroe's edits").  Attacking one's own work product constitutes a substantially similar matter. Model R. Prof'l Conduct cmt.1 ("Under [Rule 1.9], for example, a lawyer could not properly seek to rescind on behalf of a new client a contract drafted on behalf of the former client."); *see also* Restatement (Third) of the Law Governing Lawyers § 132 cmt.d(ii) (2000) ("A matter is substantially related if it involves the work the lawyer performed for the former client.  For example, a lawyer may not on behalf of a later client attack the validity of a document that the lawyer drafted if doing so would materially and adversely affect the former client.").  Cebeci's argument that the prior work is not substantially related because New U does not facially challenge the agreement is unavailing.  New U's FACC challenges the validity of the agreement, the enforceability of the early termination fee, and what it means to breach the contract under the agreement. ECF No. 85 at 29, 46, 48.  That is enough to show that Cebeci is attacking his own work product.[5]  Because that constitutes a substantially similar matter, the elements for conflict of interest under NRCP 1.9(a) are also met for Cebeci's work on the template agreement.

**B.  Proposed Sanctions**

Violation of an ethical rule does not necessarily result in disqualification. NRPC 1.0A(d) ("[V]iolation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation.").  I "must balance whether disqualification is warranted in a particular situation and should weigh the prejudices that the parties will suffer

---

[5] It also appears that New U's counsel did not include facial challenges to the text of the agreement even though the same counsel included such allegations in the *Beyond Wealth* complaint, which involves the same template agreement. *See e.g.*, ECF No. 69-4 at 29 (alleging that T1 "drafted the CPPA to conceal the illegal nature of its unlicensed aggregating services . . . ."); *id.* at 49 (contending that the early termination fee provision is an "illegal penalty provision).

based on the district court's decision, consider the public interest in the administration of justice, and discourage the use of such motions for purposes of harassment and delay . . . ." *Nev. Yellow Cab Corp.*, 152 P.3d at 742-43.  My inherent equitable powers to control the conduct of attorneys in front of me also includes the ability to "deny a disqualification motion on condition that the attorney or firm in question comply with certain limitations." *UMG Recordings, Inc. v. MySpace, Inc.*, 526 F. Supp. 2d 1046, 1062 (C.D. Cal. 2007).

Reviewing *de novo*, I agree with Judge Albregts' recommendations for sanctions.  He appropriately balanced the equities in fashioning sanctions that weigh all the interests in this case.  Cebeci appearing in this case after working in the *DermAktive* and *Gilling* cases gives the appearance of impropriety that may provoke "public suspicion or obloquy." *Brown*, 14 P.3d at 1270.  Additionally, his conduct in attacking his own work product goes against the public's interest in disincentivizing lawyers from "lay[ing] the basis for subsequent representation" against their own clients by "drafting provisions in a contract that could later be construed against the former client[s]." Restatement (Third) of the Law Governing Lawyers § 132 cmt.b (2000).  Further, the fact that New U seemingly changed its FACC to not include allegations that attack the terms of the agreement and to not include references to the *DermAktive* litigation suggests that Cebeci's prior representation of T1 is limiting the kinds of arguments he can make on New U's behalf.  Revoking Cebeci's pro hac vice status and screening him from future involvement in this case adequately addresses these concerns.

But the equities weigh against disqualifying Rome & Associates and BB&P.  A lawyer violating NRCP 1.9 does not automatically disqualify their firm under NRCP 1.10(a).  I must balance the equities to determine whether disqualification of Rome & Associates and BB&P is warranted. *Nev. Yellow Cab Corp.*, 152 P.3d at 742-43.  I have "broad discretion" in determining

1    whether disqualification is warranted and I can consider the risk of disclosure of confidential

2    information in this analysis. *See Brown*, 14 P.3d 1266, 1269.[6]

3         The risk is small that Cebeci actually received and disclosed to his firm or BB&P

4    confidential information that would relate to this case.  There is no evidence that Cebeci has used

5    any confidential knowledge to assist him in this case. ECF No. 73 at 34-36 (explaining in detail

6    how he learned various information in 2020 through publicly available sources, other merchants'

7    counsel, and contacts in the industry).  Cebeci has provided his own declaration and one from

8    TFM Law's principal, Theodore F. Monroe, that explain how he worked remotely on only

9    discrete legal issues that were largely based on publicly available documents and that Monroe

10   did not share any confidential information with Cebeci. *Id.* at 32-33, 121-22.  Cebeci's work on

11   the agreement involved editing a template that was made at a time when T1 was still a payment

12   facilitator. *Id.* at 32.  He avers that he "did not draft, research or opine on the enforceability of

13   the [Early Termination Fee]" and believes it was already in the document before he began

14   editing. *Id.* at 32.  Taken together, the likelihood that Cebeci actually received and shared

15   confidential information is small.

16        Because Cebeci has likely not obtained confidential information and there is no evidence

17   that he passed on any such information, there is little risk that T1 will be harmed by allowing

18

19   [6] T1 argues that if I find matters are substantially related, there is an irrebuttable presumption
     that confidences were shared, which warrants disqualification of Cebeci and imputation to the
20   other firms.  But the case law T1 cites to is not binding here, and such a mandate would
     contradict the balancing of equites set out in *Brown* that permits me to consider the risk that
21   confidential information may be disclosed. *Brown*, 14 P.3d 1266, 1270 ("We are mindful of the
     quandary the district court faced in this case: allowing disqualification of co-counsel without
22   requiring proof that confidences were shared tends toward automatic disqualification, based on
     re-imputation of an imputed conflict, while requiring such proof introduces all the problems
23   associated with screening . . . .  We conclude that requiring proof of a reasonable probability that
     counsel actually acquired privileged, confidential information strikes the appropriate balance in
     disqualification cases such as this.").

Rome & Associates and BB&P to continue representing New U.  This minimal risk does not outweigh New U's interest in being represented by counsel of its choosing, particularly when that counsel has specialized knowledge in payment processing law.

There also is evidence suggesting this motion, and the one filed in the *Beyond Wealth* case at the same time, may have been made for improper purposes. *See* ECF No. 73 at 95, 98, 100-01, 104, 118 (detailing the circumstances of an apparent text message sent by T1's CEO to Beyond Wealth's CEO saying that Cebeci and another Rome & Associates partner should "bow now" because he was "going to really go for everyone," for "trying to sue" his lawyers).  This evidence, combined with the fact that T1 never filed a disqualification motion in *T1 Payments LLC v. Grauert*, No. 2:20-cv-411-KJD-VCF (in which Cebeci represented another merchant against T1) indicates that this motion may be about more than just T1's concerns about conflicts of interest.

Having reviewed the issues de novo, I adopt Magistrate Judge Albregts' recommended sanctions to revoke Cebeci's pro hac vice status and order that his firm and BB&P screen Cebeci off from this case going forward.  I therefore overrule the objections to Judge Albregts' report and recommendation.

I THEREFORE ORDER that Magistrate Judge Albregts' Report and Recommendation **(ECF No. 84) is ADOPTED IN PART.**  I admonish and sanction attorney Bradley Cebeci.  I revoke Cebeci's privilege to practice pro hac vice in this case.  I impose conditions upon Cebeci's firm Rome & Associates and Brown Brown & Premsrirut by ordering them to (1) screen Cebeci from this case going forward, and (2) certify that Cebeci has been screened

/ / / /

from this case and that he will not share in any fees going forward by filing a notice regarding the screening.  The notice should be filed by August 20, 2021.

DATED this 4th day of August, 2021.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE