**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| T1 PAYMENTS LLC, | Case No.: 2:19-cv-01816-APG-DJA |
| Plaintiff | **Order** |
| v. | [ECF Nos. 88, 99, 123, 124, 125, 159, 170] |
| NEW U LIFE CORPORATION, | |
| Defendant | |
| AND ALL RELATED COUNTERCLAIMS | |

This is a breach of contract action arising out of a credit card processing agreement (the CPPA) between plaintiff T1 Payments, LLC (T1) and defendant New U Life Corporation (New U). New U has asserted counterclaims against T1, T1 Payments Limited (T1UK),[1] TGlobal Services Limited (TGlobal), Donald Kadson, Debra King, Amber Fairchild (collectively, the T1 parties), and Payvision B.V. (Payvision). New U contends that the counterdefendants engaged in an illegal credit card laundering scheme and defrauded New U out of its funds under the guise of offering legitimate credit card payment processing services.

Payvision, a Dutch limited liability company, moves to dismiss New U's counterclaims against it for lack of personal jurisdiction, for *forum non conveniens*, and for failure to state a claim. New U opposes and moves for leave to file a supplemental brief. Payvision moves for leave to file a sur-reply.

The T1 parties also filed multiple motions to dismiss for failure to state a claim. New U opposes those motions as well.

---

[1] T1Payments Limited is a United Kingdom company.

The parties are familiar with the facts, so I repeat them here only where necessary to resolve the motions.  I deny without prejudice Payvision's motion to dismiss for lack of personal jurisdiction and open a jurisdictional discovery period.  I grant Payvision's motion to dismiss the claims against it for failure to state a claim, with leave to amend.  I grant in part the T1 parties' motions to dismiss, with leave to amend.

# I. ANALYSIS

## A. Personal Jurisdiction and *Forum Non Conveniens*

Payvision contends it is a Dutch company with no contacts with Nevada, so it is not subject to personal jurisdiction in this court.  Payvision also contends that New U is bound by a forum selection clause in the agreement between Payvision and TGlobal, which selects the United Kingdom.  New U responds that Payvision is bound by a forum selection clause in the CPPA between New U and T1, which selects Nevada as the forum for disputes arising out of the CPPA.  New U alternatively contends that Payvision is subject to specific jurisdiction in Nevada.

New U moves for leave to file a supplemental response to Payvision's motion to dismiss. New U contends that after briefing was complete on the original motion, discovery revealed additional facts showing that Payvision has more contacts with Nevada than Payvision represented in its motion.  New U also contends that the Supreme Court's decision in *Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017 (2021) is new authority that supports New U's contention that Payvision is subject to specific personal jurisdiction in Nevada.

Payvision opposes supplementation, arguing that if New U wanted to conduct jurisdictional discovery prior to responding to Payvision's motion to dismiss, it should have done so.  Payvision contends that instead, New U took advantage of Payvision's inability to participate

in discovery without waiving its objection to the court's exercise of personal jurisdiction over it to lead the T1 parties into making statements at depositions that suggest Payvision has contacts with Nevada without Payvision having the opportunity to cross examine that testimony. Payvision contends that New U could and should have developed this evidence before, so there is no good cause to allow New U to supplement its response now.  Payvision also contends that *Ford* merely clarified existing law and is distinguishable from this case.

Finally, Payvision moves for leave to file a sur-reply to New U's reply to the motion for leave to file a supplement.  Payvision contends it should have the opportunity to address New U's argument in reply that Payvision chose not to attend the relevant depositions because the argument is new and incorrect.  Payvision contends that it had no choice but to opt out of the depositions because if it participated, that may mean it waived its objection to the exercise of personal jurisdiction over it.  New U responds that its argument was not new and was a fair response to Payvision's argument that I should not consider the deposition testimony due to Payvision not being present to cross examine the witnesses.  New U also contends that Payvision could have participated in the depositions without waiving its already preserved objection to personal jurisdiction.

The parties engage in much wrangling over the procedural steps each side did or did not take to litigate the personal jurisdiction and *forum non conveniens* questions.  But ultimately, the questions are whether the forum selection clauses apply, what to do if both apply, whether this court may exercise personal jurisdiction over Payvision, and whether to dismiss for *forum non*

*conveniens*.  Consequently, I grant New U's motion to supplement[2] and Payvision's motion for leave to file a sur-reply.

I deny without prejudice Payvision's motion to dismiss based on lack of personal jurisdiction and open a jurisdictional discovery period so that I can make an informed decision on whether the Nevada forum selection clause applies to Payvision,[3] whether the court has personal jurisdiction over Payvision, whether to dismiss for *forum non conveniens*, whether New U is bound by the forum selection clause in the TGlobal/Payvision contract, and what should happen if both forum selection clauses apply.  New U has presented evidence from which it appears that further discovery may show that Payvision had substantially more contacts with Nevada (particularly, that it knew of and benefitted from the CPPA that allowed Payvision to process transactions that originated in the United States) than its motion to dismiss would lead

---

[2] Good cause exists to allow the supplement because New U obtained new information in discovery, and it was reasonably diligent in seeking that information and moving to supplement. *See* LR 7-2(g).  "Good cause usually exists if there is a showing that the party seeking good cause was reasonably diligent." *Borenstein v. Animal Found.*, 526 F. Supp. 3d 820, 849 (D. Nev. 2021) (quotation omitted).  New U filed its amended counterclaim adding Payvision as a counterdefendant in January 2021. ECF No. 85.  New U initially sought the depositions with which it supplements its opposition in late April 2017, prompting Payvision to move to stay discovery as to itself, and the other counterdefendants to move to vacate and reschedule the relevant depositions. *See* ECF Nos. 127; 128.  In July 2021, Magistrate Judge Albregts stayed discovery as to Payvision but ordered the depositions to go forward. ECF No. 148.  New U sought clarification of Judge Albregts' order, which Judge Albregts granted and denied in part on August 3. ECF Nos. 149, 152.  Judge Albregts stated that the depositions could proceed. ECF No. 152.  The depositions took place on September 9, 10, and 22. ECF No. 159-3 at 3.  New U filed the motion to supplement less than two weeks after the last deposition. ECF No. 159.

[3] The test for the "closely related" doctrine is not as narrow as Payvision proposes.  The Ninth Circuit has not limited it to only a non-signatory enforcing a forum selection clause against a signatory when the non-signatory is closely related to a signatory. *See Manila Indus., Inc. v. Ondova Ltd. Co.*, 334 F. App'x 821, 823 (9th Cir. 2009) (signatory defendant successfully enforcing a forum selection clause against a non-signatory plaintiff).  And, as Payvision argues with respect to the TGlobal/Payvision contract, a non-signatory may be bound by a forum selection clause under contract and agency principles such as estoppel. *See Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009); *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006).

1  one to believe. *See* ECF Nos. 159-3 through 159-5.  Payvision contends that it could have

2  countered that evidence had it been able to attend the depositions and cross-examine the

3  witnesses without waiving its objection to personal jurisdiction.  I will give Payvision that

4  opportunity now.

5       Consequently, I deny without prejudice Payvision's motion to dismiss on the basis of

6  personal jurisdiction and *forum non conveniens*.[4]  I open jurisdictional discovery for a period of

7  60 days.  Payvision's participation in jurisdictional discovery will not constitute a waiver of its

8  objection to this court's exercise of personal jurisdiction over it.  Within 30 days after

9  jurisdictional discovery closes, Payvision may file a motion to dismiss for lack of personal

10  jurisdiction and *forum non conveniens* if facts exist to do so.

11       **B.  Motions to Dismiss for Failure to State a Claim**

12       All counterdefendants, including Payvision, move to dismiss the counterclaims for failure

13  to state a claim and failure to plead fraud with particularity.  New U agrees to dismiss counts

14  three, four, and five against Payvision. ECF No. 117 at 18 n.6.  I therefore grant that portion of

15  Payvision's motion to dismiss as unopposed.  New U otherwise contends that it has plausibly

16  alleged its counterclaims against each of the counterdefendants.

17       In considering a motion to dismiss, I take all well-pleaded allegations of material fact as

18  true and construe the allegations in a light most favorable to the non-moving party. *Kwan v.*

19

20  [4] The private and public factors in the *forum non conveniens* analysis may be illuminated by
jurisdictional discovery.  For example, Nevada may have a greater interest in resolving this

21  dispute if Payvision had significant contacts with the state.  The parties' briefs on *forum non
conveniens* were lacking in material respects.  This may be because the parties focused their

22  arguments on personal jurisdiction.  But the court cannot make an informed decision if the
parties do not address each factor with relevant evidence, argument, and legal authority.  I refer

23  the parties to *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1223-37 (9th Cir. 2011)
for guidance on the law, types of evidence needed for the various factors, analysis of weighing
the factors, and whether any dismissal should be conditioned.

*SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017).  However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations. *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1163 (9th Cir. 2017).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

For claims sounding in fraud, Federal Rule of Civil Procedure 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud."  "This means the plaintiff must allege the who, what, when, where, and how of the misconduct charged, including what is false or misleading about a statement, and why it is false." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016) (simplified).  However, the plaintiff may allege knowledge generally. Fed. R. Civ. P. 9(b).  "[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *United Healthcare Ins. Co.*, 848 F.3d at 1180 (quotation omitted).

Where the plaintiff alleges a fraudulent scheme or conspiracy, "[p]articipation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted).  But a plaintiff may not "merely lump multiple defendants together" in the complaint's allegations. *Id.*  Rather, the plaintiff must "differentiate [its] allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding [its] alleged participation in the fraud." *Id.* at 764-65 (quotation omitted).  Where there are multiple defendants, "a plaintiff must, at a

1  minimum, identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 765

2  (simplified).

3    1.   Alter Ego

4    Kasdon, T1UK, TGlobal, Fairchild, and King move to dismiss the allegations that they

5  are alter egos of T1 or each other.  They contend that New U has made only conclusory

6  recitations of the doctrine's elements unsupported by factual allegations.  They also argue the

7  First Amended Counterclaim (FACC) does not distinguish which defendant supposedly

8  dominates or controls which corporation, instead lumping all of the entities and individual

9  defendants together.

10    New U responds that it has adequately alleged that Kasdon, King, and Fairchild control

11  the T1 entities because of their ownership interests and positions with the companies and because

12  the FACC alleges that T1UK and TGlobal are mere shell entities.  New U contends that the

13  FACC adequately alleges a unity of interest because the entities and individuals are all involved

14  in the fraudulent scheme, they share employees, have commingled funds, and share a common

15  website with a Las Vegas address.  Finally, New U contends it would work an injustice not to

16  find alter ego as to all three entities and the individuals because the entities facilitated the fraud

17  and failure to disregard the corporate form would shield Kasdon from his own fraudulent actions.

18    To allege alter ego liability, New U must plausibly allege:

19    (1) The corporation [is] influenced and governed by the person asserted to be its
      alter ego[;] (2) There [is] such unity of interest and ownership that one is
20    inseparable from the other; and (3) The facts must be such that adherence to the
      fiction of separate entity would, under the circumstances, sanction a fraud or
21    promote injustice.

22  *Truck Ins. Exch. v. Palmer J. Swanson, Inc.*, 189 P.3d 656, 660 (Nev. 2008).  Factors that may

23  demonstrate an alter ego relationship include: "(1) commingling of funds;

7

(2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities." *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 847 (Nev. 2000).

New U has not alleged facts showing that it would sanction a fraud or work an injustice if the corporate cloak were not thrown aside. New U has sued each entity and individual for their own conduct, so New U does not explain how it would sanction a fraud if there were no alter ego finding. Additionally, New U has not alleged that T1, the entity that the FACC alleges has New U's money,[5] will be unable to satisfy a judgment if New U prevails. For example, there are no factual allegations that any counterdefendant transferred funds or assets to evade creditors. *See Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 888 (Nev. 1987) (finding that alter ego applied where the company's officers "treated corporate funds as their own by making ad hoc withdrawals at the bank in the form of advances to themselves at a time when the corporation's debt to [the plaintiff] was not being paid, and that [the plaintiff] was damaged because these actions left the corporation without funds to repay the debt").

But it does not appear that amendment would be futile, so I grant New U leave to amend. *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102-03 (9th Cir. 2018) ("Leave to amend can and should generally be given, even in the absence of such a request by the party," so long as amendment would not be futile.). New U may take this opportunity to clarify its allegations regarding who it is alleging are alter egos of each other and to add any facts that support each element of its alter ego allegations.

////

////

---

[5] *See* ECF No. 85 at 26-28.

### 2.  Declaratory Relief

Count ten of the FACC seeks a declaration that T1 cannot collect an early termination fee under the CPPA.[6]  Count eleven seeks a declaration that the CPPA is void as an illegal contract. T1 moves to dismiss these claims, arguing that the CPPA is not void for illegality.  T1 also argues that a contract is illegal only if its object is illegal and there is nothing illegal about payment processing services.  Additionally, throughout the briefs the counterdefendants argue that New U has not plausibly alleged that the CPPA is void for illegality.  The counterdefendants argue that violating the rules of the credit card brands ("Card Brand Rules") is not equivalent to illegal behavior.

New U responds that it has adequately alleged that the early termination fee is unenforceable because T1 terminated the agreement, not New U.  New U also contends that the counterdefendants have engaged in illegal credit card laundering by setting up shell companies in England to hide the origin of the transactions and by processing all transactions as originating with T1.  New U also argues that T1 fraudulently induced it into entering the CPPA, so the contract is unenforceable.

New U has plausibly alleged the CPPA is void.  First, as discussed below, New U has plausibly alleged that it was fraudulently induced to enter the CPPA.  Under Nevada law, a "party to a contract may seek a rescission of that contract based on fraud in the inducement," and if the contract is validly rescinded, "there is no longer any contract to enforce." *Awada v. Shuffle Master, Inc.*, 173 P.3d 707, 713 (Nev. 2007) (en banc) (quotation omitted).

---

[6]  T1 concedes that if count ten is based on New U's assertion that T1 terminated the agreement, then I must accept that allegation as true and there would be a plausible basis for count ten even if the CPPA is not void. ECF No. 88 at 24.  In its opposition, New U confirms that this (in addition to its arguments regarding illegality) is the basis for count ten. ECF No. 96 at 23.  I therefore deny this portion of T1's motion.

Second, New U has plausibly alleged the CPPA is void for illegality.  Under Nevada law, illegal contracts are not enforceable. *St. Mary v. Damon*, 309 P.3d 1027, 1035 (Nev. 2013) (en banc).  New U has plausibly alleged that T1's scheme of falsely representing itself as a card-brand-approved payment facilitator, setting up dummy foreign companies through which to route New U's credit card transactions originating in the United States, and aggregating those transactions under TGlobal's account for processing in Europe would constitute "unfair or deceptive acts or practices in or affecting commerce" in violation of 15 U.S.C. § 45(a).  The Federal Trade Commission (FTC), which is the agency charged with enforcing § 45, has pursued enforcement actions against similar credit card aggregation schemes through straw persons or entities. *See F.T.C. v. Apex Capital Group, LLC*, CV 18-9573-JFW(JPRx), ECF No. 73 (C.D. Cal.) (*Apex*); *F.T.C. v. E.M. Sys. & Servs., LLC*, 8:15-cv-01417-SDM-AEP, ECF No. 58 (M.D. Fla.) (*E.M.*); 15 U.S.C. §§ 41, 45(a)(2).  The FTC's complaint in *Apex* survived a motion to dismiss. *Apex*, ECF No. 123.[7]  And its complaint in *E.M. Systems* resulted in monetary judgments against the defendants.[8] *E.M.*, ECF Nos. 117-119 124-126, 128-148.  The fact that the agency tasked with enforcing § 45 deems similar conduct deceptive makes New U's allegations plausible at this stage of the proceedings.  Finally, a contract can be illegal both in its object and its performance. *See Drexler v. Tyrrell*, 15 Nev. 114, 136 (Nev. 1880) (stating that a "contract may be illegal because the consideration was such, or the act to be performed is of that character").  I therefore deny the counterdefendants' motions to the extent they are based on the argument that New U does not plausibly allege that the CPPA is void for illegality.

/ / / /

---

[7] *Apex* remains pending.

[8] Most of the defendants in *E.M. Systems* settled with the FTC.

### 2.  Fraud Against All Counterdefendants

Count one of the FACC alleges T1 falsely represented that it was a payment facilitator that could provide payment processing services in compliance with both the law and with the Card Brand Rules.  According to the FACC, these representations were made as part of a fraudulent scheme orchestrated by Kasdon, King, and Fairchild to trick New U into submitting transactions to T1 for processing so that they could obtain access to New U's money.  The FACC alleges that once T1 obtained a significant amount of New U's money, it fabricated a reason to terminate the CPPA so that it could unfairly claim an early termination fee and so it could attempt to coerce New U to process a greater volume of transactions through T1.  According to the FACC, T1 has engaged in this scheme several times, as shown by similar lawsuits filed in Nevada courts.

To state a fraud claim, New U must allege "(1) a false representation, (2) the defendant's knowledge or belief that the representation is false, (3) the defendant's intention to induce the plaintiff's reliance, (4) the plaintiff's justifiable reliance, and (5) damages." *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021).  An "omission of a material fact which a party is bound in good faith to disclose is equivalent to a false representation, since it constitutes an indirect representation that such fact does not exist." *Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007) (quotation omitted).  The claimed damages "must be proximately caused by reliance on the original misrepresentation or omission." *Id.*  "Proximate cause limits liability to foreseeable consequences that are reasonably connected to both the defendant's misrepresentation or omission and the harm that the misrepresentation or omission created." *Id.*

////

////

### a. Payvision

Payvision argues that this claim fails because New U has not alleged with particularity how Payvision joined or participated in the alleged conspiracy or scheme and merely lumps Payvision in with the other defendants.  Payvision also argues that New U failed to allege a false representation attributable to Payvision.  New U responds that Payvision is liable for T1 and Kasdon's false representations as a co-conspirator and that New U has pleaded with particularity T1 and Kasdon's fraud.

New U has not plausibly alleged Payvision participated in the scheme that harmed it.  New U has alleged that Payvision knowingly participated in the credit card laundering scheme by agreeing to be the acquiring bank for TGlobal, which aggregated payments from dummy companies in England to process credit card transactions originating in the United States.  Under Rule 9(b), knowledge can be alleged generally.

However, New U has not plausibly alleged that Payvision participated in the scheme that proximately caused New U's damages.  New U has not alleged that the payment processing scheme itself harmed it.  Instead, New U contends that the counterdefendants' "plan was to accumulate a significant amount of processed funds and then, instead of remitting the net sales proceeds to [New U], create a point of dispute, and use this issue to confiscate and convert all of [New U's] money to [their] own benefit." ECF No. 85 at 22.  New U does not plausibly allege facts that, if true, would show that Payvision conspired with any of the other counterdefendants to carry out this plan.  To the contrary, New U has agreed to drop its claims against Payvision that would suggest it participated in the alleged theft of funds.

Consequently, I grant Payvision's motion to dismiss the fraud claim against it.  Because it is not clear that amendment would be futile, I grant New U leave to amend.  This is a fraud

1  claim, so any allegations that Payvision participated in the alleged fraud must be stated with

2  particularity.

3                   *b. T1*

4          T1 argues there is no allegation that its alleged misrepresentation that it was a payment

5  facilitator caused New U's damages.  T1 contends that the CPPA provided for T1 to process

6  payments, and that is what it did, so there was no misrepresentation.  T1 also contends the

7  circumstances when T1 could withhold New U's funds is governed by the CPPA, which T1 has

8  followed.

9          New U responds that it has adequately alleged T1 falsely represented itself as a payment

10  facilitator and that its services were compliant with the law and Card Brand Rules.  New U states

11  that T1 made the misrepresentation on its LinkedIn webpage, as well as through Kasdon and a

12  sales agent during an October 2018 phone call.  New U contends it has plausibly alleged that T1

13  did so to induce New U to entrust its funds with T1, who then fabricated a reason to terminate

14  the contract to collect the early termination fee as it has done to other merchants.  New U

15  contends that it relied on T1's representations that it was a payment facilitator.  Finally, New U

16  alleges that had it known that was false, it would not have done business with T1 and T1 would

17  not have had access to New U's funds, which T1 now holds.

18          New U has plausibly alleged fraud against T1 with particularity.  New U has alleged that

19  T1 falsely represented that it is a payment facilitator on its LinkedIn page and that it is a

20  registered payment processor with all major credit card brands on its Facebook page. ECF No.

21  85 at 9-10.  According to the FAC, these representations are false because T1 is not a registered

22  payment facilitator with Visa or Mastercard, and T1 knew these representations were false. *Id.* at

23  10-11, 35.

1   The FACC also alleges that New U's chief executive officer and controller reviewed and

2   relied on T1's representations in deciding to use T1's services. *Id.* at 17.  Finally, New U alleges

3   that the misrepresentation proximately caused New U's damages because New U would not have

4   entrusted its funds to T1 had it known the truth. *Id.* at 35-36.  New U thus plausibly alleges that

5   without fraudulently inducing New U to enter into the contract, T1 would not have been able to

6   execute its alleged plan of obtaining access to New U's funds and then manufacturing a sham

7   reason to terminate the CPPA and keep New U's funds. *Id.* at 22, 35.  Consequently, I deny T1's

8   motion to dismiss the fraud claim.

9                                      c.  Kasdon

10   Kasdon argues that he did not make the misrepresentation on which New U's fraud claim

11   depends because it was made on T1's website.  He acknowledges that the FACC alleges that in

12   an October 2018 phone call, Kasdon repeated the representations on the website that T1 had

13   expertise in processing payments for high-risk merchants like New U and that its solution for

14   these clients was "compliant."  But he contends that the misrepresentation at issue is that T1 was

15   a payment facilitator, and there is no allegation that Kasdon personally made that representation.

16   New U responds that it has adequately alleged Kasdon personally made

17   misrepresentations, including that T1's solution was "compliant."  New U also contends that as

18   T1's chief executive officer, Kasdon authorized the written misrepresentations in the CPPA and

19   on T1's website that T1 is a facilitator.

20   The FACC plausibly alleges a fraud claim against Kasdon with particularity.  According

21   to the FACC, Kasdon reiterated T1's representations that it offered a "compliant" solution for

22   processing credit card payments for high-risk merchants like New U during an October 2018

23   phone call. ECF No. 85 at 18.  According to the FACC, New U signed the CPPA a few days

after this phone call. *Id.*  A reasonable inference from this allegation is that Kasdon was confirming either that T1 complied with Card Brand Rules, the law, or both.  As discussed above, New U plausibly alleges that representation was false, that Kasdon knew it was false, that New U relied on it, and that New U was damaged as a result.  I therefore deny Kasdon's motion to dismiss the fraud claim.

### d.  T1UK, TGlobal, Fairchild, and King

T1UK and TGlobal argue they cannot be held liable for T1's alleged fraud under a common enterprise theory because that theory does not apply in civil actions by someone other than a public regulatory body.  They contend that absent some means of holding them liable for T1's misrepresentation, there are no allegations that either of them made misrepresentations. Fairchild and King argue there are no allegations that they made a misrepresentation.  New U responds that it has alleged a RICO enterprise and it has alleged all counterdefendants participated in the scheme as conspirators and aiders and abettors.

Under Nevada law, an "actionable civil conspiracy consists of a combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts." *Consol. Generator-Nev., Inc. v. Cummins Engine Co., Inc.*, 71 P.2d 1251, 1256 (Nev. 1998).  A defendant is liable for civil aiding and abetting "if the defendant substantially assists or encourages another's conduct" in committing the underlying wrong. *Dow Chem. Co. v. Mahlum*, 970 P.2d 98, 112 (Nev. 1998), *overruled in part on other grounds by GES, Inc. v. Corbitt*, 21 P.3d 11, 15 (Nev. 2001).  To establish aiding and abetting, New U must allege: (1) that T1 and Kasdon committed fraudulent misrepresentations that injured New U; (2) that the other counterdefendants were aware of their roles in promoting the fraudulent misrepresentation at the time they provided assistance; and

(3) that the other counterdefendants knowingly and substantially assisted T1 and Kasdon in committing fraudulent misrepresentation. *Id.*

The FACC plausibly alleges T1UK, TGlobal, Fairchild, and King were co-conspirators and aided and abetted the fraudulent misrepresentation.  According to the FACC, the T1 entities and their principals operated a single enterprise through common employees and one website through which they all participated in the alleged credit card laundering scheme and related fraud scheme. ECF No. 85 at 4-5.  The FACC alleges that T1UK and TGlobal were created solely to facilitate the processing of United States transactions through a European acquiring bank. *Id.* at 5.  Additionally, the FACC alleges a pattern of similar conduct toward other merchants, as shown by various lawsuits and Better Business Bureau complaints. *Id.* at 14, 42-43.  A reasonable inference from these allegations is that what allegedly happened to New U was not a one-off dispute, but part of a common scheme by the T1 entities, Kasdon, King, and Fairchild.  I therefore deny these counterdefendants' motion to dismiss the fraud claim.

### 3.  Conversion Against All Counterdefendants

Count two of the FACC asserts that all the counterdefendants converted New U's funds by taking possession of them and refusing to return them after New U demanded them.  The counterdefendants move to dismiss this claim on varying grounds.

#### a.  Payvision

Payvision argues the FACC fails to state a conversion claim against it because New U's allegations show that Payvision performed under the TGlobal contract and deposited funds in TGlobal's account.  Payvision contends that because it did what New U intended it to do, New U cannot state a claim for conversion against it.  New U responds that it has adequately alleged conversion against T1, for which Payvision is liable as a co-conspirator.

As discussed above, New U has not adequately alleged that Payvision conspired to convert New U's funds.  I therefore grant this portion of Payvision's motion, with leave for New U to amend if facts exist to do so.

### b. T1 Parties

T1 argues there can be no conversion claim because it and New U have a written contract.  Alternatively, it argues that this claim is barred by the economic loss doctrine.  T1 also contends that New U has not plausibly alleged improper dominion over the funds because T1 is holding the funds pending a judicial determination as to the funds' disposition in this case.  Finally, T1 contends that a conversion claim cannot lie for commingled funds, and the funds are commingled in a reserve account pursuant to the contract's terms.  T1UK, TGlobal, Kasdon, King, and Fairchild argue there are no allegations they converted New U's funds because New U alleges T1 is the entity withholding the funds.

New U responds that T1 is holding $1.4 million of New U's funds, thereby exercising dominion and control over those funds by refusing to return them.  New U contends T1 has no right to the funds because the CPPA was procured through fraud and is void for illegality.  New U asserts that because the contract is void, it does not bar New U's resort to conversion as an equitable remedy.  New U contends that the economic loss doctrine does not apply to intentional torts, nor does it apply where, as here, the contract is void.  And New U asserts that a conversion claim for money is appropriate where the amount owed is fixed and readily ascertainable, and the funds are held in a segregated reserve account.  New U contends that whether the funds were commingled is a question of fact not suitable for determination at this stage of the proceedings.

As to the other T1 parties, New U argues that it has alleged that Kasdon uses the T1 entities' bank accounts interchangeably and that he controls all three entities.  New U also argues

1  that it alleged Kasdon personally cut off New U's account and that any release of funds would

2  require his approval.  Finally, New U contends the other counterdefendants are liable as co-

3  conspirators and aiders and abettors.

4        Conversion is "a distinct act of dominion wrongfully exerted over another's personal

5  property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or

6  defiance of such title or rights." *M.C. Multi-Fam. Dev., L.L.C. v. Crestdale Assocs., Ltd.*, 193

7  P.3d 536, 542 (Nev. 2008) (quotation omitted).  "[C]onversion is an act of general intent, which

8  does not require wrongful intent and is not excused by care, good faith, or lack of knowledge."

9  *Id.* at 542-43 (quotation omitted).

10        Under Nevada law, money can be converted. *See Lopez v. Javier Corral, D.C.*, Nos.

11  51541, 51972, 2010 WL 5541115, at *6 (Nev. Dec. 20, 2010).  But generally, money cannot be

12  the subject of a conversion claim unless it is sufficiently identifiable, such as "where it is

13  earmarked, or set aside in a separate account, or otherwise identifiable." *Hester v. Vision*

14  *Airlines, Inc.*, 2:09-cv-00117-RLH-RJJ, 2011 WL 856871, at *3 (D. Nev. Mar. 9, 2011).

15        New U has adequately alleged that T1 and Kasdon exercised dominion and control over

16  its funds by refusing to return the money. ECF No. 85 at 23-26 (alleging Kasdon and T1 "shut

17  off" New U's account and refused to return the funds).  Whether T1 and Kasdon did so properly

18  under the contract does not support dismissal where New U has plausibly alleged there was no

19  genuine dispute that the funds belong to New U and that the counterdefendants have engaged in

20  fraud. *See Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 674 (Nev. 2021)

21  (stating that "[i]n the absence of malice," a party may seek judicial resolution of a "genuine"

22  dispute to ownership without being liable for conversion).  And because New U has adequately

23  alleged the CPPA is void, the existence of that contract does not necessarily preclude New U's

conversion claim.  As discussed above, New U has adequately alleged T1UK, TGlobal, King, and Fairchild participated in the alleged fraudulent scheme that resulted in T1 and Kasdon withholding New U's funds.  Whether the funds have been commingled or are otherwise identifiable is a question of fact not suitable for resolution at dismissal.

Finally, it is not clear at this stage that New U's conversion claim would be barred by the economic loss doctrine.  That doctrine does not apply to economic losses caused by "intentionally caused harm." *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1153 (Nev. 2013), *as corrected* (Aug. 14, 2013).  New U has plausibly alleged its funds were withheld as part of an intentional scheme to take its money.  I therefore deny the T1 parties' motions to dismiss the conversion counterclaim.

### 4.  Civil Theft

Count three of the FACC asserts against all counterdefendants a claim for civil theft for receiving, possessing, and withholding approximately $1.451 million of New U's funds under Nevada Revised Statutes (NRS) § 205.0832(1) and § 41.580.  New U has agreed to dismiss this claim as to Payvision.

#### a.  T1

T1 argues that it cannot be liable under § 205.0832(1) because criminal statutes do not provide a civil cause of action.  T1 also contends that § 41.580 does not provide a cause of action against the alleged thief.  Rather, it contends that the section is meant to provide a cause of action against a third-party recipient of stolen property.  T1UK, TGlobal, Kasdon, King, and Fairchild argue there is no allegation they controlled or withheld New U's money.

New U responds that it has plausibly alleged that T1 possessed New U's property knowing that it was stolen.  New U disputes that § 41.580 limits recovery against only third-

party possessors of the stolen property and not the thief.  New U contends that even if the statute

is limited to possessors of stolen property, New U has alleged the counterdefendants collectively

stole the money.  New U contends it has adequately alleged that Kasdon personally controlled

the funds because he uses the T1 entities' bank accounts interchangeably, controls all three

entities, personally cut off New U's account, and indicated that any release of funds would

require his approval.  New U asserts that the other counterdefendants are liable as co-

conspirators or aiders and abettors.

The FACC cites to NRS § 205.0832(1), which defines theft, § 205.275, which defines an

offense involving stolen property, and § 41.580, which provides a civil right of action for treble

damages against the possessor of stolen property.  New U does not appear to dispute that it has

no direct cause of action under the criminal statutes in §§ 205.0832 and 205.275.  Instead, New

U contends that § 41.580 applies not only to the recipient of stolen property, but also to the thief.

Section 41.580 states:

> If property has been taken from its owner by larceny, robbery, burglary,
> embezzlement, theft or any other offense that is a crime against property and
> another person buys, receives, possesses or withholds the property under
> circumstances that make such conduct a violation of subsection 1 of NRS
> 205.275, the owner of the property may bring a civil action against the person
> who bought, received, possessed or withheld the property and may recover treble
> the amount of any damage the owner has suffered, together with the owner's costs
> in the action and a reasonable attorney's fee.

The Supreme Court of Nevada has not addressed whether § 41.580 creates a cause of action

against the thief in addition to the recipient of stolen property.  I therefore must predict how that

court would decide the question. *Gravquick A/S v. Trimble Navigation Int'l Ltd.*, 323 F.3d 1219,

1222 (9th Cir. 2003).  Under Nevada rules of statutory interpretation, I look first to the statute's

plain language. *Clay v. Eighth Jud. Dist. Ct.*, 305 P.3d 898, 902 (Nev. 2013).  If the statute's "language is clear and unambiguous," I enforce it "as written." *Id.* (quotation omitted).

Section 41.580's language unambiguously creates a cause of action against only the recipient of stolen property because it refers to "another person" (meaning someone other than the thief) who buys, receives, possesses, or withholds the stolen property.  New U has not plausibly alleged that any of the counterdefendants knowingly received stolen property because it alleges that T1 holds and refuses to return the funds.  Even if some of the alleged co-conspirators could fall within the statute's meaning of "another person," New U has not sufficiently alleged who was the thief and who was the other person who received the stolen property.

Finally, New U's reference to Payvision as the other person is unavailing.  New U does not plausibly allege that Payvision stole the property such that the other counterdefendants could be the recipients of stolen property.  Indeed, New U agreed to dismiss this claim against Payvision.

I therefore grant the T1 parties' motions to dismiss the civil theft claim.  However, because it is not clear that amendment would be futile, I grant New U leave to amend if facts exist to do so.

### 5.  Money Had and Received and Unjust Enrichment

Count four of the FACC asserts a claim against all counterdefendants for money had and received.  Count five asserts against all counterdefendants a claim for unjust enrichment.  Both claims are based on the allegations that T1 improperly claimed an early termination fee in the amount of $1,171,995.99 and improperly retained $132,827.74 in reserves.  New U has agreed to dismiss these claims as to Payvision.

The T1 parties argue these two claims are duplicative, so I should dismiss the money had and received claim.  They also contend the claims fail because there is a written agreement that governs the parties' dispute.  Finally, T1UK, TGlobal, Kasdon, Fairchild, and King argue there are no allegations that they retained New U's money.

New U argues that it has plausibly alleged T1 has retained funds that in equity and good conscience belong to New U and that Kasdon exercised control over the funds because he decided whether to release the funds.  New U asserts that the T1 parties cannot rely on the existence of the contract because the FACC plausibly alleges the contract is void.  And New U argues that even if the CPPA is not void, T1 continues to hold the reserves long past the time called for in the contract and in an amount in excess of that needed to protect T1.  Finally, New U contends the other T1 parties are liable as co-conspirators or aiders and abettors.  New U does not respond to T1's argument that these claims are duplicative.  I therefore grant this portion of T1's motion as unopposed and dismiss the money had and received claim. LR 7-2(d).

"Unjust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Certified Fire Prot. Inc. v. Precision Constr., Inc.*, 283 P.3d 250, 257 (Nev. 2012) (quotation omitted).  The FACC plausibly alleges that New U conferred a benefit on T1 by engaging in transactions under the CPPA through which T1 obtained access to New U's funds, and T1 accepted and then retained those funds.  Taking New U's allegations as true, retention of those funds would be unjust because New U has alleged the CPPA was fraudulently induced and T1 manufactured a sham reason for terminating the agreement and keeping New U's funds.  Because New U has plausibly alleged the CPPA is void,

its existence does not preclude New U from resorting to the unjust enrichment remedy.  Finally,

New U has plausibly alleged that the other T1 parties were participants in the scheme to

misappropriate New U's money.  I therefore deny theT1 parties' motions to dismiss this claim.

### 6.  Civil RICO Under Nevada and Federal Law

Counts six and seven of the FACC assert civil RICO claims under Nevada and federal

law against all counterdefendants.  "Nevada's anti-racketeering statutes provide for a civil cause

of action for injuries resulting from racketeering activities under which a plaintiff may recover

treble damages, attorney's fees and litigation costs." *Hale v. Burkhardt*, 764 P.2d 866, 867 (Nev.

1988).  It is unlawful for a person:

> (b) Through racketeering activity to acquire or maintain, directly or indirectly,
> any interest in or control of any enterprise.
> (c) Who is employed by or associated with any enterprise to conduct or
> participate, directly or indirectly, in:
> > (1) The affairs of the enterprise through racketeering activity; or
> > (2) Racketeering activity through the affairs of the enterprise.
> . . .
> (j) To conspire to violate any of the provisions of this section.

NRS § 207.400.  Under Nevada law, racketeering activity means "engaging in at least two

crimes related to racketeering that have the same or similar pattern, intents, results, accomplices,

victims or methods of commission, or are otherwise interrelated by distinguishing characteristics

and are not isolated incidents . . . ." *Id.* § 207.390.  Crimes related to racketeering activity are

statutorily defined by reference to specific crimes or a conspiracy to commit those crimes. *Id.*

§ 207.360.  A plaintiff asserting a Nevada RICO claim must allege: "(1) the plaintiff's injury . . .

flow[s] from the defendant's violation of a predicate Nevada RICO act; (2) the injury [was]

proximately caused by the defendant's violation of the predicate act; and (3) the plaintiff [did]

not . . . participate[ ] in the commission of the predicate act." *Allum v. Valley Bank of Nev.*, 849 P.2d 297, 299, 301 (Nev. 1993).

The federal RICO Act "prohibits a person employed by or associated with any enterprise engaged in interstate commerce to conduct or participate in the conduct of the enterprise through a pattern of racketeering activity." *Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1147 (9th Cir. 2008) (citing 18 U.S.C. § 1962(c)). The Act provides a private right of action to redress violations. 18 U.S.C. § 1964(c) (authorizing a civil action by "[a]ny person injured in his business or property by reason of a violation of section 1962"). To state a federal civil RICO claim, a plaintiff must sufficiently allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property." *Ove v. Gwinn*, 264 F.3d 817, 825 (9th Cir. 2001) (quotations omitted). Racketeering activity is defined by reference to numerous federal and state criminal offenses. 19 U.S.C. § 1961. Nevada and federal civil RICO claims sound in fraud, so Rule 9(b)'s heightened pleading standard applies. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004); *Hale*, 764 P.2d at 869-70.

### a. Payvision

Payvision contends the FACC fails to state a RICO claim against it because there are no allegations that Payvision engaged in acts constituting racketeering activities. New U responds that it has adequately alleged predicate acts of theft by false pretenses, embezzlement, extortion, and fraudulent misrepresentations. New U contends it has adequately identified Payvision's role in the enterprise and racketeering activity because Payvision was the acquiring bank that enabled T1 to process transactions for New U.

As with New U's other claims against Payvision, New U has not adequately alleged Payvision participated in the enterprise or racketeering activity that caused New U's harm. New

1  U has not adequately alleged Payvision participated in theft by false pretenses, embezzlement,

2  extortion, or fraudulent misrepresentations.  There are no factual allegations, stated with

3  particularity, that Payvision was part of the scheme to defraud New U.  I therefore grant this

4  portion of Payvision's motion to dismiss, with leave to amend if facts exist to do so.

5  <center>*b. The T1 parties*</center>

6        The T1 parties argue that the FACC fails to plausibly allege a pattern of racketeering

7  activity because it does not allege facts to support the elements of each alleged predicate crime

8  and instead alleges the racketeering activity in conclusory fashion.  For example, T1 contends

9  that New U does not identify whether it is alleging T1 embezzled as a bailee or a fiduciary; the

10  FACC alleges T1 extorted New U to ruin New U's reputation, not for money or property; and the

11  FACC fails to allege fraud.  T1 contends the allegations related to wire fraud, access device

12  fraud, and money laundering are even more conclusory.  And T1 contends that the RICO

13  allegations fail because New U lumps all counterdefendants together.

14        New U responds that it has adequately alleged T1 and Kasdon engaged in theft by false

15  pretenses, embezzlement, extortion, and fraudulent misrepresentations in violation of Nevada

16  law, as well as illegal credit card laundering, wire fraud, access device fraud, and illegal money

17  transmission in violation of federal law.  New U contends the FACC adequately alleges this

18  activity is part of a pattern of racketeering activity as shown by other similar lawsuits against T1

19  and online reviews complaining of similar behavior.  And it contends it has adequately alleged

20  T1UK, TGlobal, Fairchild, and King were part of the enterprise, conspired to commit these

21  offenses, and aided and abetted the offenses.

22        New U has plausibly alleged a Nevada civil RICO claim against the T1 parties.  The

23  FACC alleges that T1, through Kasdon, committed extortion in violation of NRS § 205.320

<center>25</center>

1  when Kasdon threatened to sue New U if it pursued any action to recover its funds and

2  threatened to add New U to the MATCH list if New U made a legal claim to reclaim its funds.[9]

3  ECF No. 85 at 26.  New U also has plausibly alleged that T1 and Kasdon obtained New U's

4  money by false pretense, as discussed in relation to the fraud claim. *See* NRS § 207.360(28)

5  (listing "[o]btaining possession of money or property valued at $650 or more . . . by means of

6  false pretenses" as a crime related to racketeering); *Hale*, 764 P.2d at 869 ("A false pretense is a

7  representation of some fact or circumstance which is not true and is calculated to mislead; it may

8  consist of any words or actions intended to deceive.").[10]

9      New U also plausibly has alleged T1 and Kasdon engaged in at least two crimes related

10  to a pattern of racketeering, both through their acts in relation to New U as well as through

11  similar accusations in lawsuits and Better Business Bureau complaints by others.  New U has

12  plausibly alleged that its injury flows from and was proximately caused by these predicate acts

13  because T1 and Kasdon obtained and refused to return New U's funds through the alleged fraud,

14  and then attempted to extort New U from seeking legal redress for a return of the funds.  Finally,

---

16  [9] According to the FACC, "MATCH stands for Member-Alert-To-Control-High-risk
17  ('MATCH') and refers to a database maintained and published by Mastercard, and utilized by
    Mastercard, Visa and American Express as an industry blacklist to prevent businesses (and their
    principals) whose payment card processing privileges have been terminated for certain
18  enumerated reasons from participating in the payments system." ECF No. 85 at 26 n.1.

19  [10] T1 argues that under Nevada pleading standards, New U must plead the predicate acts under
    the heading for the RICO count.  I disagree.  The Supreme Court of Nevada has stated that a
20  "civil RICO pleading must, in that portion of the pleading which describes the criminal acts that
    the defendant is charged to have committed, contain a sufficiently plain, concise and definite
21  statement of the essential facts such that it would provide a person of ordinary understanding
    with notice of the charges." *Hale*, 764 P.2d at 869-70.  I read that to mean that wherever in the
22  complaint the plaintiff describes the criminal acts, it must do so with particularity.  But even if
    Nevada would require the pleading rule T1 suggests, T1 has not explained why it should apply in
23  this federal court.  The federal rules require pleading with particularity, which New U has done.
    Regardless, because I am granting New U leave to amend, if it would like to address this critique
    in its amended counterclaim, it may do so.

New U has plausibly alleged the other T1 parties participated in the enterprise and conspired to defraud New U.  Although the counterdefendants contend they are merely lumped together, the FACC adequately identifies each counterdefendant's role in the alleged enterprise and their status as co-conspirators.  I therefore deny the T1 parties' motions to dismiss the Nevada civil RICO claim.

But New U has not adequately alleged its federal RICO claim.  In that count, the FACC relies on "extortion, wire fraud, access device fraud, money laundering, and laundering of monetary instruments" as the predicate acts. ECF No. 85 at 45.  It alleges that through the credit card laundering scheme, the counterdefendants engaged in "hundreds of acts of access device fraud, wire fraud, and money laundering each and every day." *Id.*  However, as discussed elsewhere in this order, New U has not plausibly alleged that it was harmed by the alleged credit card laundering scheme or any related wire fraud, access device fraud, or money laundering.  As for the extortion, New U has alleged only a single instance of that, so it does not establish a pattern of racketeering.

I therefore grant the T1 parties' motions to dismiss the federal RICO claim.  But because it is not apparent that amendment would be futile, I grant New U leave to amend.

## 7.  Breach of Contract

Count eight asserts a breach of contract claim against T1 based on T1 failing to disclose that international fees would be charged on transactions, blocking access to New U's account without a legitimate basis, withholding New U's funds in an amount exceeding a reasonable risk of loss to T1, and imposing an unwarranted early termination fee.  T1 argues the FACC fails to allege a breach of contract because it does not identify what contractual provision T1 breached.  New U responds that it has alleged T1 breached the contract by terminating New U's account

without a legitimate basis, imposing an unwarranted early termination fee, and failing to disclose that New U's U.S. customers would be charged international fees.  New U states that it has adequately alleged the contract provisions at issue.

To state a breach of contract claim under Nevada law, the plaintiff must allege "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Rivera v. Peri & Sons Farms, Inc.,* 735 F.3d 892, 899 (9th Cir. 2013) (quoting *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006)).

New U has adequately alleged that if the CPPA is valid, T1 breached it by terminating it without a legitimate basis, imposing an early termination fee even though it may collect an early termination fee only where New U terminated the agreement, and withholding more reserves than called for in the agreement. ECF No. 85 at 19-20, 23-24, 26-28, 46.  However, New U has not plausibly alleged that the failure to disclose the foreign transaction fees breached the contract.  New U does not identify how the contract required that disclosure.

I therefore grant in part T1's motion to dismiss this claim.  However, I grant New U leave to amend to add facts to show that the failure to disclose the foreign transaction fees breached the contract if facts exist to do so.

### 8.  Breach of the Implied Covenant of Good Faith and Fair Dealing

Count nine alleges T1 breached the implied covenant by misreporting the amounts due to New U, claiming an unwarranted early termination fee, withholding New U's funds in an amount exceeding a reasonable risk of loss to T1, and threatening to place New U on a MATCH list without a legitimate basis.  T1 argues the FACC fails to state a claim for breach of the covenant because the FACC's allegations show that T1's actions were contemplated by the CPPA.  New U responds that T1's failure to advise it that its U.S. customers would be charged substantial

1  foreign transaction fees defeated the purpose of the contract.  It also argues that T1's actions,

2  including its decision to hold 100% of New U's funds as reserves, breach the covenant.

3       Nevada law implies a covenant of good faith and fair dealing in every contract.  *Hilton*

4  *Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991).  A party to the

5  contract breaches the covenant where it literally complies with the contract's terms but

6  "deliberately countervenes the intention and spirit of the contract." *Id.*

7       New U has adequately alleged that T1's conduct, including its failure to disclose the

8  foreign transaction fees, breached the covenant of good faith and fair dealing.  New U has

9  alleged that the purpose of the contract was for T1 to process New U's credit card transactions

10  that originated in the U.S., that the foreign transaction fees were substantial and resulted in New

11  U's customers complaining, and those and other complaints led New U to switch some of its

12  payment processing to another provider until it could resolve the issue with T1. ECF No. 85 at

13  23.  However, because New U's other allegations repeat its breach of contract claims, I dismiss

14  them. *See Jimenez v. GEICO Gen. Ins. Co.*, 448 F. Supp. 3d 1108, 1113 (D. Nev. 2020) (stating

15  that "a claim alleging breach of the implied covenants of good faith and fair dealing cannot be

16  based on the same conduct establishing a separately pled breach of contract claim").  I therefore

17  grant in part T1's motion to dismiss this claim.

18  **II.  CONCLUSION**

19       I THEREFORE ORDER that counterdefendant Payvision B.V.'s motion to dismiss **(ECF**

20  **No. 99) is GRANTED in part**.  The motion is granted as to all claims against Payvision B.V. for

21  failure to state a claim, with leave to amend.  The motion is denied without prejudice as to

22  personal jurisdiction.

23

1    I FURTHER ORDER that counterclaimant New U Life Corporation's motion for leave to

2  file a supplemental memorandum **(ECF No. 159) is GRANTED**.

3    I FURTHER ORDER that counterdefendant Payvision B.V.'s motion for leave to file a

4  sur-reply **(ECF No. 170) is GRANTED**.

5    I FURTHER ORDER that jurisdictional discovery as to Payvision B.V. is open **until**

6  **March 25, 2022**.  Within 30 days after jurisdictional discovery closes, Payvision B.V. may move

7  to dismiss for lack of personal jurisdiction and *forum non conveniens* if facts exist to do so.

8    I FURTHER ORDER that the T1 parties' motions to dismiss **(ECF Nos. 88, 123, 124,**

9  **125) are GRANTED in part** as set forth in this order.

10    I FURTHER ORDER that counterclaimant New U Life Corporation may file a second

11  amended counterclaim by **February 18, 2022**, if facts exist to do so.  If New U Life Corporation

12  decides not to file a second amended counterclaim, the case will proceed on those claims that

13  survived dismissal as set forth in this order.

14    DATED this 21st day of January, 2022.

15

16    _____
      ANDREW P. GORDON
17    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23