UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| T1 Payments LLC, | Case No. 2:19-cv-01816-ART-DJA |
| Plaintiff, | |
| v. | **Sealed Order**[1] |
| New U Life Corporation, | |
| Defendant. | |
| And related counterclaims. | |

This is a breach of contract action arising out of a credit card processing agreement between Plaintiff T1 Payments and Defendant New U Life Corporation. New U has asserted counterclaims against T1 Payments; T1 Payments Limited; TGlobal Services Limited; Donald Kadson; Debra Karen King; Amber Fairchild (collectively, the "T1 Parties"); Lefebvre International Corporation; Marc Lefevbre (collectively, the "Lefebvre Parties"); and Payvision, B.V. Both New U and the T1 Parties have moved to maintain the confidentiality designations they made over certain deposition material under the parties' stipulated protective order. (ECF Nos. 190 and 191). Because the Court finds that certain of the T1 Parties' designated information is appropriately designated, it grants the T1 Parties' motion in part and denies it in part. (ECF No. 190). Because the Court finds that the information that New U designated as confidential is appropriately designated, it grants New U's motion to maintain its confidentiality designations. (ECF No. 191). The Court finds these matters properly resolved without a hearing. LR 78-1.

---

[1] This Order is sealed because it addresses information that the Court finds should remain confidential under the protective order in this case.

## I. Background.

On February 3, 2021 the Court granted the parties' stipulated protective order, which provides:

> (b) "Confidential" information is information that falls within one or more of the following categories:
>
> …
>
> (ii) Non-public financial information of any of the Parties, the disclosure of which may have the effect of causing harm to the financial or competitive position of any Producing Party from which the information was obtained or of any Party to this action, the disclosure of which may have the effect of causing harm to the financial or competitive position of any Producing Party from which the information was obtained;
>
> (iii) Non-public information related to any of the Parties' credit card processing or charging operations, the disclosure of which may have the effect of causing harm to the financial or competitive position of any Producing Party from which the information was obtained;
>
> (iv) Any trade secret of the Producing Party, the Parties, or any third parties, which has not been made public, and the disclosure of which may have the effect of causing harm to the competitive position of any Producing Party from which the information was obtained, any Party to this action or any third party including, but not limited to, agreements, pricing information, policies and procedures, and customer lists; and
>
> (v) Any commercially sensitive information of the Producing Party, the Parties, or any third parties, which has not been made public, the disclosure of which is likely to harm the competitive position of any Producing Party from which the information was obtained, any Party to this action, or any third party, or would contravene an obligation of confidentiality of the Producing Party, including, without limitation: (1) policies or procedures; (2) agreements by and between the Producing Party, any one or all of the Parties, and/or third parties; (3) business terms, including payment, pricing, fees, or other terms of doing business; and/or (4) information which is subject to contractual or legal non-disclosure obligations.

(ECF No. 92 at 2-3).

The T1 Parties move to maintain their confidentiality designations over two[2] categories of testimony from deponent Lisa Kaye: testimony regarding Counter-defendant Donald Kadson and testimony regarding third party, Pixxels, Ltd.  (ECF No. 190).  New U moves to maintain its confidentiality designations over three categories of testimony from deponent Ken Burgess: testimony regarding New U's former credit card processer, testimony regarding the formulation and testing of New U's SomaDerm product, and testimony regarding the methods by which New U monitors its distributors.  (ECF No. 192).

**II.    Discussion.**

Generally, the public may access "documents and information produced during discovery unless the party opposing disclosure shows 'good cause' why a protective order is necessary." *Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210 (9th Cir. 2002); *see also* Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.").  "While courts generally make a finding of good cause before issuing a protective order, a court need not do so" when the parties stipulate to the order.  *In re Roman Catholic Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).  When the protective order was stipulated to, and no party has made a showing of good cause, "the burden of proof remains with the party seeking protection."  *Id.* (quotation marks and alterations omitted).

If a party challenges the confidentiality of information produced under a protective order, the court must conduct a two-step analysis.  *Universal Entertainment Corporation v. Aruze Gaming America, Inc.*, No. 2:18-cv-00585-RFB-NJK, 2020 WL 9461115, at *2 (D. Nev. May 22, 2020) (citing *Bangert v. Cty. of Placer*, No. 2:17-cv-01677-KJN-P, 2019 WL 358518, at *2 (E.D. Cal. Jan. 29, 2019)).  First, a court must determine "whether particularized harm will result from disclosure of information to the public."  *Id.*  "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy" this step.  *Id.* (quoting *Beckman*

---

[2] In reply, the T1 Parties concede that one category of information—the names of employees—need not be designated confidential because that information is already public. (ECF No. 201 at 2).  The Court will thus not address this category of information.

*Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992)). Second, if a court determines that such harm will result from disclosure of the discovery information, "it must then balance 'the public and private interests to decide whether [maintaining] a protective order is necessary.'" *Id.* (quoting *Phillips*, 307 F.3d at 1211). The Ninth Circuit has "directed courts doing this balancing to consider the factors identified ... in *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995)." *Id.* (citing *Phillips*, 307 F.3d at 1211).

In *Glenmede*, the Third Circuit noted several factors that a district court may consider in determining whether "good cause" exists to continue the protection of the discovery material produced pursuant to a stipulated protective order: (1) whether disclosure will violate any privacy interest; (2) whether the information is being sought for legitimate or improper purposes; (3) whether disclosure will cause a party embarrassment; (4) whether the information is important to public health and safety; (5) whether the sharing of information among litigants will promote fairness and efficiency; (6) whether a party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public. *See Glenmede*, 56 F.3d at 483 (citations omitted). *Glenmede* also advised that:

> Discretion should be left with the court to evaluate the competing considerations in light of the facts of individual cases. By focusing on the particular circumstances in the cases before them, courts are in the best position to prevent both the overly broad use of [protective] orders and the unnecessary denial of confidentiality for information that deserves it....

*Id.* (citations omitted).

### A. The Court denies the T1 Parties' motion to retain their confidentiality designation over Lisa Kaye's testimony about Donald Kadson.

The T1 Parties argue that the Court should maintain its confidentiality designations over portions of Kaye's testimony regarding Kadson's interactions with non-parties. (ECF No. 190). They argue that this testimony is inflammatory, irrelevant, and untrue. (*Id.* at 8). Because New U could not identify how the information would relate to the litigation, the T1 Parties assert that New U can only be interested in using the information for "scandalous or libelous purposes."

(*Id.*). The T1 Parties rely on *Selling Source, LLC v. Red River Ventures, LLC*—a District of Nevada case—for the proposition that, where information is inaccurate and could portray a nonparty in false light, "particularized harm will result." (*Id.*). The T1 Parties assert that this information falls under the parties' stipulated protective order as "commercially sensitive information" that could harm T1 Payments' and Kadson's competitive positions. (*Id.* at 11).

New U responds that the T1 Parties have failed to carry their burden of showing why portions of Kaye's testimony regarding Kadson qualifies as confidential. (ECF No. 196 at 4). New U explains that the testimony is relevant to their racketeering allegations because it demonstrates "Kadson's pattern of coercive behavior directed at other merchants who demanded that T1 release their processing funds…" (*Id.* at 4-5). This information, New U argues, is not commercially sensitive information related to the T1 Parties' business operations but would only harm the T1 Parties' or Kadson's competitive positions because of the "inherently repugnant nature of Kadson's behavior…." (*Id.* at 5). New U distinguishes *Selling Source*, explaining that, unlike the parties in that case who both agreed that the information at issue was false, here, the T1 Parties are attempting to unilaterally declare that Kaye's testimony is false. (*Id.* at 6).

The T1 Parties reply that, because New U did not provide a legitimate reason for wanting Kaye's testimony to be public, "the only use to which New U Life will put such information is for the nefarious purposes of vexing and harassing the T1 Parties and non-parties, and unduly multiplying the proceedings." (ECF No. 201 at 2). The T1 Parties argue that commercially sensitive information—undefined in the parties' protective order—can include information like that contained in Kaye's testimony because it has the potential to harm the viability of Kadson's businesses. (*Id.* at 3). The T1 Parties reassert that the information is irrelevant to the litigation and only sought for improper purposes because New U has not explained a legitimate need for the information to be public. (*Id.* at 4).

The Court denies the T1 Parties' motion to maintain their confidentiality designation over Kaye's testimony regarding Kadson. At step one, the T1 Parties have not asserted substantiated allegations that Kaye's testimony about Kadson will harm Kadson's businesses. While the T1 Parties argue that New U will use the information for scandalous purposes, they have provided no

reason—other than stating that New U could not articulate why the information should not be protected—for the Court to believe that New U will use it to harm Kadson.

*Selling Source* is also distinguishable. There, the Court found a compelling reason to seal a portion of a non-dispositive motion that contained a statement that a non-party had stolen information from the plaintiff. *See Selling Source, LLC v. Red River Ventures, LLC*, No. 2:09-cv-01491-JCM-GWF, 2011 WL 1630338, at *4 (D. Nev. April 29, 2011). The parties agreed that the statement was inaccurate, and the Court noted that it could cast the non-party in a false light or be used in a libelous fashion. *See id.* The Court thus found good cause to redact the information at issue and seal the non-redacted version. *See id.*

However, here, the Court is not deciding whether documents should be sealed, nor is it deciding whether false information about a non-party should be public. Kadson is a party to this litigation and, while he contests the validity of Kaye's statements, given New U's assertions that they are accurate, the Court is not able to determine that they could be used to libel Kadson or cast him in a false light. Instead, Kaye's statements are more akin to the allegations the court in *Selling Source* decided not to seal—statements that the plaintiff had been dishonest—because "a litigant's embarrassment, incrimination, or exposure to further litigation" were not reason enough to seal. *See id.* Because the Court is not convinced that the T1 Parties have met their burden of establishing particularized harm, it need not proceed to the second step or consider the balancing factors in *Glenmede*.

### B. The Court grants the T1 Parties' motion to retain their confidentiality designation over Lisa Kaye's testimony about Pixxels, Ltd.

The T1 Parties argue that the Court should maintain their confidentiality designations over information in Kaye's testimony about Pixxels because it is a non-party entity. (ECF No. 190 at 9). They explain that publicly disclosing information about Pixxels, its business structure, and false information against which Pixxels "would have to defend itself against…if publicly exposed" would harm Pixxels' competitive position. (*Id.*). They add that the information is irrelevant to the litigation and falls squarely under the parties' protective order as commercially

sensitive information.  (*Id.* at 11).  Notably, the T1 Parties claim that false information about Pixxels is being used in another litigation, to which false information Pixxels must now respond.  (*Id.*).

New U responds that information related to Pixxels should not be confidential because it is relevant to New U's claims that the T1 Parties fraudulently transferred assets and business to Pixxels to evade creditors.  (ECF No. 196 at 8).  New U adds that the T1 Parties have not carried their burden of showing particularized harm will result if the information is not protected.  (*Id.* at 8-9).  To the contrary, they assert that the public "has an interest in information shedding light on T1's disregard of corporate formalities…"  (*Id.* at 9).

The T1 Parties reply that New U has never alleged that Pixxels is an alter ego of a named defendant and that, in a separate lawsuit—which New U cites—Pixxels has moved to dismiss, including a declaration that Pixxels has never received T1 business or assets.  (ECF No. 201 at 5).  The T1 Parties add that certain of Kaye's deposition contradicts New U's claims.  (*Id.*).  The T1 Parties assert that this contradiction "further emphasizes New U Life's intention to misuse information about non-party Pixxels if it is no longer subject to a protective order."  (*Id.*).

The Court grants the T1 Parties' motion to maintain their confidentiality designation over Kaye's testimony regarding Pixxels.  At step one, the T1 Parties have explained that, should Kaye's testimony about Pixxels' ownership and structure—which the T1 Parties assert is inaccurate—were made public, Pixxels would have to defend itself against the notion that it has obtained business and assets from the T1 Parties.  While the T1 Parties do not elaborate about why Pixxels would need to defend itself against these allegations, the T1 Parties explain that this is not the first time Pixxels has made efforts to debunk these claims in a lawsuit against T1 Payments.  (ECF No. 201 at 5) (citing *Ibuumerang, LLC v. T1 Payments LLC*, No. 2:21-cv-01611-JCM-VCF (D. Nev)).  It is a closer call for the Court to say that the T1 Parties have established particularized harm because they do not explain, for example, whether former T1 Payments' merchants may begin suing Pixxels or whether competitors may use Kaye's testimony to their advantage.  However, because the T1 Parties have asserted that Pixxels—a nonparty—

may need to interject itself into a litigation to debunk these claims if public, the Court finds that the T1 Parties have alleged particularized harm.

Because the T1 Parties have carried their burden under step one, the Court will balance the public and private interests under the *Glenmede* factors.  First, if New U's position that the T1 Parties have moved assets and business into Pixxels is untrue, the T1 Parties have an interest in the public not conflating T1 Payments and Pixxels.  This factor weighs in favor of protection.  Second, while New U's argument that the testimony is relevant to the litigation is compelling, New U does not explain how a confidentiality designation will prevent New U from using this information in this action.  This factor weighs in favor of protection.  Third, as a corporate entity, it is unlikely that disclosure of this information will cause Pixxels embarrassment.  But the T1 Parties have asserted that the public disclosure of the testimony could harm Pixxels pecuniary interests by necessitating its defense against allegedly false claims.  *See Glenmede*, 56 F.3d at 484 (stating that "[w]e have typically viewed the 'embarrassment' factor in terms of non-pecuniary harm to individuals; however, the primary measure of the well-being of a business is pecuniary.").  This factor weighs in favor of protection.  Fourth, the information—while not relevant to public health—is important to the safety of potential Pixxels clients if, as New U asserts, the T1 Parties are surreptitiously transferring assets and business to Pixxels.  This factor weighs in favor of disclosure.  Fifth, the sharing of this information among litigants would promote fairness and efficiency if the allegation that the T1 Parties are transferring assets and business is true.  Indeed, the T1 Parties have pointed out that this claim has come up in another litigation against T1 Payments.  This factor weighs in favor of disclosure.  The sixth factor is inapposite here.  Seventh, the case involves issues important to the public because it involves claims regarding a merchant improperly withholding client funds.  This factor weighs in favor of disclosure.

There are compelling reasons on both sides.  However, the Court also considers the facts of this individual case, notably that the parties agreed to a protective order designed to cover "commercially sensitive information of…any third parties, which has not been made public, the disclosure of which is likely to harm the competitive position of…any third party…" (ECF No.

92 at 3). New U has not argued that the information in Kaye's testimony about Pixxels does not fall under this category of information. And even though New U argues that Pixxels is a shell company, that allegation is still just an allegation and Pixxels is still a third party. The Court thus grants the T1 Parties' motion to maintain their confidentiality designation over portions of Kaye's testimony regarding Pixxels.

### C. The Court grants New U's motion to retain its confidentiality designation over Kenneth Burgess' testimony about New U's former credit card processor.

New U argues that the Court should maintain its confidentiality designations over portions of Burgess' testimony regarding New U's relationship with a former credit card processor. (ECF No. 192-3 at 6). New U asserts that it swiftly terminated its relationship with the former card processor after learning that the processor did not have adequate fraud protection in place. (*Id.*). However, if this information were made public, New U asserts that it would lose potential customers. (*Id.*). New U asserts that this information falls into the stipulated protective order category protecting "non-public information related to any of the Parties' credit card processing or charging operations…" (*Id.*).

The T1 Parties respond that New U has failed to carry its burden of showing particularized harm would result if this information were public because it happened four years ago. (ECF No. 198 at 10-11). The T1 Parties assert that the information should not be protected under the *Glenmede* factors, highlighting that "issues related to security breaches in New U Life's payments processing operations should be publicly disclosed, particularly if those breaches exposed individual customers' personal and financial information." (*Id.* at 12). In reply, New U reasserts that the incident—which occurred prior to the events giving rise to this litigation—is irrelevant to the action and could damage its reputation if released. (ECF No. 202 at 5-6).

The Court grants New U's motion to maintain its confidentiality designation over Burgess' testimony regarding its former credit card processor. At the first step, New U has asserted that it would lose potential customers if those customers learned that it had maintained a relationship with a card processer—even for a short period of time—that did not have adequate fraud protection in place. While the T1 Parties argue that the incident happened four years ago,

and should thus not be a concern, the Court finds New U's concerns to be particularized enough to meet its burden.

At the second step, the Court balances the public and private interests considering the *Glenmede* factors. First, the disclosure of Burgess' testimony regarding the former credit card processor would reveal information over which New U has claimed a privacy interest because it could impact New U's business. This factor weighs in favor of protection. Second, New U does not address the T1 Parties arguments that they have a legitimate need for this information to support their claim that New U's business activities constituted a risk. While the protective order would not necessarily hinder the T1 Parties' use of this information to prosecute its claims in this action, New U's failure to address this factor means that it weighs in favor of disclosure. Third, disclosure could negatively impact New U's pecuniary interests, meaning that this factor weighs in favor of protection. Fourth, the information is important to public safety because, as the T1 Parties point out, even though New U only used the credit card processor for a short time, that use may have exposed its customers to fraud. This factor weights in favor of disclosure.

Fifth, the T1 Parties' argument that sharing the information will promote efficiency, without more, is insufficient. To the contrary, New U argues that it has no issue sharing the information amongst the parties to the suit. This factor weighs in favor of protection. The sixth factor is inapposite. Seventh, while information about potential consumer fraud may be important to the public, the case at hand is not about consumer fraud or any allegations arising out of New U's use of its former payment processor. Instead, the T1 Parties' claims against New U involve New U's termination of the contract between it and the T1 Parties. While the T1 Parties claim that New U's use of this former payment processor indicates risk that would have justified the T1 Parties withholding certain funds, the T1 Parties have not adequately explained how the credit card processor that New U used before using T1 Payments would have factored into its risk analysis or decision to withhold funds. Moreover, this testimony falls within the parties' stipulated protective order safeguarding "[n]on-public information related to any of the Parties' credit card processing or charging operations..." (ECF No. 92). Balancing these factors, the Court finds that this testimony should retain its confidentiality designation.

### D. The Court grants New U's motion to retain its confidentiality designation over Kenneth Burgess' testimony about SomaDerm testing and formulation.

New U argues that Burgess' testimony about SomaDerm—one of New U's nutraceutical products—should remain confidential because it relates to testing the product and product formulation. (ECF No. 191 at 6). It asserts that the testimony is appropriately classified as confidential under the protective order as a trade secret. (*Id.* 6). New U adds that release of this testimony, which discusses the contents of the proprietary formula, would harm New U's competitive position in the market. (*Id.*).

The T1 Parties respond that Burgess' testimony is highly relevant to their claims because it demonstrates that "New U Life's illicit behavior justified T1 Payments LLC's withholding of New U Life's payment processing proceeds." (ECF No. 198 at 2). The T1 Parties explain that, during the testimony, Burgess discussed public information about the complaints New U received regarding SomaDerm, the false claims about SomaDerm that New U made, and the watchdog organizations and federal agencies that investigated SomaDerm. (*Id.*). The T1 Parties assert that the information is not a trade secret because the amount of human growth hormone (HGH) contained in SomaDerm is publicly available and New U does not explain how its HGH formula gives it a competitive advantage. (*Id.* at 8-9). The T1 Parties add that, although New U claimed that the documents underlying the testimony are confidential, New U does not argue that these documents should stay confidential in its motion and thus, New U has waived the confidentiality designation regarding the testimony. (*Id.*). Under the *Glenmede* factors, the T1 Parties argue that the SomaDerm testimony should not be confidential. (*Id.* at 12).

New U replies that the T1 Parties' explanation that they terminated New U for its misconduct in marketing SomaDerm is untrue because "T1 engaged in an internal vetting process regarding New U's business model and product." (ECF No. 202 at 2). New U attaches a declaration of Matt Hutka—a New U executive—that the formula for SomaDerm is not publicly available and disclosure of the precise amount of HGH in the product—about which Burgess testified—would allow competitors to introduce "knock-off" products. (*Id.* at 2-3). Regarding waiving confidentiality over documents on which Burgess' testimony is based, New U asserts

that it "has in no way waived confidentiality" over these documents. (*Id.*). New U concludes that the Court should retain the confidentiality of the information under the *Glenmede* factors. (*Id.* at 67).

The Court grants New U's motion to maintain its confidentiality designation over Burgess' testimony regarding the formulation of its SomaDerm product. At the first step, New U has asserted that disclosing information contained in Burgess' testimony about the formulation of SomaDerm would give competitors the ability to create "knock-off" products and would harm its competitive advantage. The Court finds this assertion of harm to be particularized. At the second step, the Court balances the public and private interests under the *Glenmede* factors.

First, disclosing the testimony will harm New U's interest in keeping its formulation private. This weighs in favor of protection. Second, while the T1 Parties argue that the false advertising surrounding the product is relevant to their argument that New U posed a significant amount of risk, they do not explain how publicizing New U's formula will advance that argument in this litigation. This is particularly true because the T1 Parties attach publicly available investigations into New U's claims that support their arguments. This factor weighs in favor of protection. Third, disclosure of this information would harm New U's pecuniary interests if competitors were able to use the proprietary formula of their product. This factor weighs in favor of protection. Fourth, while information about potential false claims regarding a product is important to public health, the T1 Parties have not explained why the precise formulation of the product is necessary to publicize when publicly available investigations already address SomaDerm's purported health claims. This factor weighs in favor of protection.

Fifth, the T1 Parties only provide a conclusory statement that sharing this information will promote fairness and efficiency. Without more, this factor weighs in favor of protection. The sixth factor is inapposite. Seventh, the parties are not litigating the propriety of New U's advertisements or the formulation of its product. They are litigating about a credit card processing agreement. While New U's advertising and formulation may be relevant to the litigation, they are not the central issue in this case. This factor weighs in favor of protection. Moreover, Burgess' testimony regarding the testing and formulation of New U's SomaDerm

product fits squarely within the parties' stipulated protective order safeguarding "[a]ny trade secret of the Producing Party…which has not been made public, and the disclosure of which may have the effect of causing harm to the competitive position of any Producing Party…" (ECF No. 92). The Court thus upholds New U's confidentiality designations over Burgess' testimony regarding the SomaDerm product.

Regarding the T1 Parties' argument that New U waived its confidentiality designations over documents underlying Burgess' testimony, this argument is not fully developed. The T1 Parties provide no authority on this point, the date on which they challenged the designations, evidence that they challenged them, or any reference to the challenged documents. Without more, the Court will not determine that New U waived its confidentiality designations over Burgess' testimony based on these documents.

### E. The Court grants New U's motion to retain its confidentiality designation over Kenneth Burgess' testimony about monitoring distributors.

New U argues that Burgess' testimony regarding the way New U monitors its distributors' advertising should remain confidential because otherwise, competitors would be made privy to sensitive internal policies and procedures, and it could harm New U's ability to effectively police distributors' compliance. (ECF No. 192-3 at 8). New U adds that the testimony is irrelevant to the litigation. (*Id.* at 8-9). The T1 Parties respond that New U's assertion that competitors would benefit from the information is a blanket assertion, insufficient to overcome the presumption of public access. (ECF No. 198 at 9-10). Regarding New U's assertion that release of the information would harm New U's ability to police distributors, the T1 Parties assert that Burgess' testimony reveals that New U does not enforce its policies until *after* a distributor makes false claims. (*Id.*). Using screenshots from certain distributors, the T1 Parties argue that New U does not effectively monitor its distributors and thus, there is no danger in releasing the testimony. (*Id.*). New U does not reply to the argument about its competitors but asserts that the screenshots the T1 Parties use do not demonstrate that its monitoring methods are ineffective. (ECF No. 202 at 5). But "[e]ven if New U's policies and procedures were not currently 100% effective, New U would still be prejudiced by the disclosure of the designated testimony." (*Id.*).

The Court grants New U's motion to retain its confidentiality designation over Burgess' testimony regarding the procedures New U uses to monitor its distributors. At the first step, New U argues that its ability to monitor its distributors would be harmed if the distributors learned the monitoring procedures about which Burgess testified. The Court is not persuaded by the T1 Parties' argument that this monitoring is ineffective and thus disclosure of New U's methods would not change anything. New U has established particularized harm.

At the second step, the Court balances the public and private interests using the *Glenmede* factors. First, disclosure of this testimony would impede New U's interest in keeping its monitoring procedures private. This factor weighs in favor of protection. Second, while the T1 Parties assert that this testimony is relevant to their case because it bears on whether New U's practices constituted a risk to T1 Payments, it is unclear why this information needs to be public for the T1 Parties to make their arguments. This factor weighs in favor of protection. Third, New U has argued that its monitoring strategies would be undermined if they were made public. In turn, this could make it more difficult for New U to ensure that its product is being marketed in the appropriate manner. This factor weight in favor of protection. Fourth, the protection—rather than distribution—of this information would promote public health and safety because it would allow New U to monitor its distributors more capably for instances of misleading advertising. This factor weighs in favor of protection. Fifth, it is unclear how distributing this information would promote fairness and efficiency and the T1 Parties' conclusory assertion is not sufficient. This factor weighs in favor of protection. The sixth factor is inapposite. Seventh, this case does not involve whether New U properly monitors its distributors. Even if that information is potentially relevant to the T1 Parties claims, it is not the key issue in this case. The Court thus maintains New U's confidentiality assertions over this testimony.

**IT IS THEREFORE ORDERED** that the T1 Parties' motion to retain their confidentiality designations (ECF No. 190) is **granted in part** as it relates to maintaining the confidentiality designation over Kaye's testimony about Pixxels. The motion is **denied in part** as it relates to Kaye's testimony about Kadson.

1  **IT IS FURTHER ORDERED** that New U's motion to maintain its confidentiality
2  designations (ECF No. 191) is **granted.**

4  DATED: May 9, 2022

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE