UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| T1 Payments LLC, Plaintiff, v. New U Life Corporation, Defendant, AND ALL RELATED COUNTERCLAIMS | Case No. 2:19-cv-01816-ART-DJA<br>ORDER<br>[ECF Nos. 372, 373, 374] |

Plaintiff and Counterclaim Defendant T1 Payments LLC, a card-payment processor, sued Defendant New U Life Corporation ("New U") for declaratory relief, and New U, a nutraceutical multilevel marketing model ("MLM") company, asserted numerous counterclaims against T1 Payments and other Counterclaim Defendants. Before the Court now is Counterclaim Defendant Amber Fairchild, Donald Kasdon, Debra Karen King, and Pixxles LLC and Pixxles LTD's (together "Counterclaim Defendants") partial motion for summary judgment on New U's Counterclaims, and New U's motion for summary judgment on its counterclaims against Counterclaim Defendants and T1 Payments Ltd ("T1UK"), TGlobal Services LLC, and TGlobal Services Ltd.[1] For the reasons stated below, the Court denies New U's motion for summary judgment, and grants Counterclaim Defendants' partial motionf for summary judgment in part, and denies it in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This is a breach of contract action arising out of a credit card processing agreement ("CPPA") between T1 Payments LLC ("T1 Payments") and New U, in which New U contends that Counterclaim Defendants, T1UK, TGlobal Services LLC and TGlobal LTD engaged in an illegal credit card laundering scheme and

[1] After these motions were filed, default was entered against TGlobal Services LLC and TGlobal Services Ltd. (ECF No. 390.) To the extent that New U's motion for summary judgment is against these entities, it is denied as moot.

defrauded New U out of its funds under the guise of offering legitimate credit card processing services. (ECF No. 215.)

In 2018, T1 Payments was a card payment processing company that provided domestic and international processing for merchant providers. (ECF No. 215 at ¶¶ 111, 125–132; ECF No. 372 at 4.) T1 Payments was owned by King, who executed documents on behalf of the company (ECF No. 372-4 at 3–4), while Kasdon, King's son, provided services to the company. (ECF No. 372-5 at 4.) From late October to mid-November, 2018, T1 Payments provided card processing services for New U pursuant to the CPPA. (ECF No. 215 at ¶¶ 125–132; ECF No. 372 at 4.) The parties dispute who ended the CPPA and who is entitled to the funds held by T1 Payments, but T1 Payments does not dispute that it retained New U's funds. (*See* ECF No. 372-2.) By August 2022, T1 Payments still existed, but was only engaged in paying funds to former merchants. (ECF No. 215 at ¶ 66; ECF No. 372-2 at 4–5.)

In 2018, Pixxles LTD and Pixxles LLC (together "Pixxles Counterclaim Defendants") were formed, and both were owned by Fairchild, Kasdon's long-time girlfriend. (ECF No. 372-5 at 6.) As of September 2021, the Pixxles Counterclaim Defendants were no longer operating—they did not generate any revenue or activity, and had no clients. (ECF No. 372-2 at 16.)

T1 Payments filed suit against New U in this Court on October 17, 2019. (ECF No. 1.) New U filed an answer and counterclaim on November 20, 2019. (ECF No. 8.) The Court granted New U leave to file its First Amended Counterclaim (FACC) on January 14, 2021. (ECF Nos. 84, 85.) The FACC added several of the current Counterclaim Defendants. Counterclaim Defendants sought to dismiss the entirety of the counterclaims in a motion to dismiss filed on January 28, 2021. (ECF No. 88.)

Judge Gordon issued an omnibus order denying the motion to dismiss in part and granting it in part on January 21, 2022. (ECF No. 194.) That omnibus

order dismissed New U's allegation of alter ego liability between all the several defendants, New U's claim for civil theft against all Counterclaim Defendants, and New U's federal RICO claim. The omnibus order permitted New U to "file a second amended counterclaim . . . if facts exist to do so." (ECF No. 194, at 30.)

New U filed the SACC on May 12, 2022. (ECF Nos. 215, 217-1.) The SACC added several new allegations meant to cure deficiencies for claims that the omnibus order dismissed without prejudice, and it added two new parties: Pixxles LLC, a Nevada-based limited liability company, and Pixxles LTD, a company based in England. Various Counterclaim Defendants filed separate motions to dismiss.

T1 Payments declared bankruptcy around February 16, 2023, (ECF No. 299), and the Court stayed proceedings and dismissed all pending motions without prejudice. (ECF No. 300.) Counterclaim Defendants later re-filed their motions to dismiss. (ECF Nos. 328, 329, 330.) The Court denied Counterclaim Defendants' motion to dismiss, finding that New U had sufficiently alleged alter-ego liability for Nevada claims, civil theft against the T1 entities and alter egos, and federal RICO liability. (ECF No. 363.)

Counterclaim Defendants subsequently moved for partial summary judgment on New U's counterclaims for (1) fraud against Counterclaim Defendants, (2) conversion against King, Fairchild, and Pixxles Counterclaim Defendants, (3) civil theft against Counterclaim Defendants, (4) unjust enrichment against Counterclaim Defendants, (5) Nevada RICO against Counterclaim Defendants, (6) Federal RICO against Counterclaim Defendants, and (6) alter ego liability as to Pixxles Counterclaim Defendants. (ECF No. 372.) New U also moved for summary judgment on (1) fraud, (2) conversion, (3) civil theft, (4) negligence, (5) unjust enrichment, (6) Nevada RICO, (7) Federal RICO, (8) breach of contract via alter ego, and (9) declaratory relief. (ECF No. 373.) The Court held oral argument on the parties' motions on August 6, 2026.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). The Court views the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

In contrast, when the nonmoving party bears the burden of proving a claim or defense, the moving party may satisfy its burden by either (1) producing evidence that negates an essential element of the non-moving party's claim or defense, or (2) showing that the nonmoving party lacks sufficient evidence to establish an essential element on which it will bear the burden of proof at trial. *See Celotex Corp.,* 477 U.S. at 323–24. If the moving party fails to meet this initial burden, the Court does not need to consider the nonmoving party's evidence and summary judgment must be denied. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

## III. DISCUSSION

### A. Failure to Oppose by T1 Payments LTD

Under the Local Rules, T1UK needed to file its opposition to New U's motion for summary judgment no later than Wednesday, January 28, 2026. L-R 7-2. T1UK still has not filed an opposition and failed to appear for oral argument. Unlike other motions, courts may not construe failure to oppose a motion for summary judgment as consent to granting the motion. *Heinemann v. Satterberg*, 731 F.3d 914, 916–17 (9th Cir. 2003); L-R 7-2. Instead, Federal Rule of Civil Procedure 56(e) provides several options in the event that a party fails to "properly address another party's assertion of fact." Fed. R. Civ. P. 56(e). These options include "consider[ing] the facts undisputed for purposes of the motion" and "grant[ing] summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it. Fed. R. Civ. P. 56(e)(2)–(3). Accordingly, the Court considers undisputed each of New U's assertions of fact as to T1UK for purposes of this motion.

### B. Negligence

New U's SACC moves for summary judgment on its negligence counterclaim, which is only asserted against Payvision B.V. (ECF No. 215; 373.) However, Payvision was dismissed with prejudice on December 12, 2022. (ECF No. 298.) At oral argument, New U conceded that its negligence claim must be dismissed because it is not asserted against any remaining Counterclaim Defendants. The Court thus dismisses New U's negligence counterclaim with prejudice.

### C. Alter Ego

New U argues that Kasdon, Fairchild, King, Pixxles Counterclaim Defendants and T1UK are the alter egos of T1 Payments. (ECF No. 373.) Counterclaim Defendants argue that the evidence establishes that Kasdon, Fairchold, King, and Pixxles Counterclaim Defendants are not liable for the

actions of T1 Payments through alter-ego liability. (ECF No. 372.)

Under Nevada law, corporations are generally treated as separate legal entities. *LFC Mktg. Grp., Inc. v. Loomis*, 8 P.3d 841, 845 (Nev. 2000). But the equitable remedy of "piercing the corporate veil" is available when it "appears that the corporation is acting as the alter ego of a controlling individual." *Id.*

To hold other entities liable as T1 Payments' alter ego, New U must prove: (1) the entity was influenced and governed by T1 Payments, (2) there is such unity of interest and ownership that one is inseparable from the other, and (3) "adherence to the fiction of a separate entity would, under the circumstances, sanction a fraud of promote injustice." *Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 496 (Nev. 1998) (citations and internal quotations omitted). Courts do not lightly throw the corporate cloak aside. *Baer v. Amos J. Walker, Inc.*, 452 P.2d 916 (Nev. 1969).

To determine whether unity of interest exists between two companies, courts consider the following factors, none of which is dispositive: (1) comingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) failure to observe corporate formalities; (5) the existence or non-existence of separate bank accounts; (6) whether sister corporations have independent headquarters; (7) whether separate corporations had separate business responsibilities and operations; and (8) whether dividends were paid to shareholders. *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987).

Even where two companies appear to be heavily intertwined, alter ego liability applies only if adherence to corporate forms would result in injustice. *North Arlington Med. Bldg., Inc. v. Sanchez Const. Co.*, 471 P.2d 240, 244 (Nev. 1970). In cases where the injustice prong is met, there is normally evidence showing the controlling entity used the alter-ego company to commit tortious conduct, hide assets, or prevent debtors from collecting debts. *Chase Bank USA, N.A. v. Dispute Resolution Arbitration Grp.*, 02:05–CV-1208LRHLRL, 2007 WL

1577853, at *2 (D. Nev. May 31, 2007) (injustice prong met because evidence indicated corporation was created to further tortious conduct)

While New U's motion for summary judgment contains allegations that Kasdon exercised control over all functions of the T1 entities and the Pixxles Counterclaim Defendants, while Fairchild and King acted at Kasdon's direction, New U cites no evidence supporting these allegations. (*See* ECF No. 373 at 21–23.) The supported allegations include that King served in management and director roles for various T1 entities, and that Fairchild served as the COO of T1 Payments and officer/director of other T1 entities. (*Id.*) However, it is well established that mere ownership or direction of a corporate entity, without more, is not sufficient to establish that the corporate form should be disregarded. *Zander v. Tropicana Ent., Inc.*, No. 213CV00848GMNPAL, 2016 WL 632208, at *3 (D. Nev. Feb. 17, 2016). Accordingly, the Court finds that Kasdon, Fairchild, and King are not the alter egos of the T1 entities or the Pixxles Counterclaim Defendants.

New U also argues that T1UK was an alter ego of T1 Payments because it was owned by T1 Payments, and may have shared a website with T1 Payments. (ECF No. 373-5 at 8, 373-8 at 6–7.) Courts have held, however, that a "mere showing that one corporation is owned by another . . . is insufficient to support a finding of alter ego." *Bonanza Hotel Gift Shop, Inc. v. Bonanza No. 2*, 596 P.2d 227, 229 (Nev. 1979). Because New U offers no evidence supporting that T1UK was an alter ego of T1 Payments, the Court, therefore, denies New U's motion for summary judgment on alter-ego liability as to T1UK.

New U next claims that the Pixxles Counterclaim Defendants are liable under the alter ego doctrine for the actions of T1 Payments. (ECF No. 373 at 21–23.) The only evidence offered by New U to support their theory is the deposition of Lisa Kaye, T1 Payments LLC's former Vice President of Business Development, who testified that two employees worked at both T1 Payments and Pixxles. (ECF

No. 373-5 at 3–5.) A small overlap of employees, however, is insufficient to support a finding of alter ego, *Zander,* 2016 WL 632208, at *3, and Counterclaim Defendants provided evidence that one of the two overlapping employees was never actually an employee of T1 Payments. (ECF No. 372-5 at 6–7.) Counterclaim Defendants have provided substantial evidence establishing that T1 Payments and the Pixxles Counterclaim Defendants did not commingle funds, adhered to corporate formalities, and maintained separate business responsibilities. (ECF No. 372 at 5.)

The evidence here does not compare to *Lorenz v. Beltio,* where the Nevada Supreme Court found alter-ego liability because there was "overwhelming" evidence that a company's owner was solely using the company for personal business. 963 P.2d at 496. In *Lorenz* undisputed evidence showed commingling of funds and that the owner was using the company's funds for personal use. *Id.* There was also evidence of extreme undercapitalization. *Id.* This is strikingly different from the situation here, where the Pixxles Counterclaim Defendants were distinctly operating for years, and where there is no evidence of undercapitalization or improper use of corporate funds.

Counterclaim Defendants have provided clear evidence establishing that Pixxles Counterclaim Defendants and T1 Payments operated as distinct businesses. There is no evidence that the companies are improperly intermingled. These facts fall well short of establishing a unity of interest between Pixxles Counterclaim Defendants and T1 Payments.

In sum, Counterclaim Defendants have met its burden to establish that no genuine issue of material fact exists as to unity of interest, which is sufficient to warrant summary judgment. New U has failed to provide evidence raising a triable issue as to unity of interest. The Court therefore finds that neither Pixxles Counterclaim Defendants, Kasdon, Fairchild, nor King are the alter egos of T1 Payments LLC, and that New U failed to establish that T1UK is an alter ego of T1

Payments.[2] The Court thus addresses whether individual liability is established for remaining counterclaims.

**D. Fraud**

New U argues that Kasdon caused T1 Payments to falsely represent itself as a lawful payment facilitator and concealed the true processing structure and destination of merchant funds and his status of being listed on a payment processing blacklist (the "MATCH list"), which caused New U to enter into the CPPA with T1 Payments. (ECF No. 373 at 16.) Counterclaim Defendants argue that New U cannot establish reasonable reliance on any misrepresentation, and any statements are not materially false. (ECF No. 372 at 6–9.)

In Nevada, fraud requires showing "(1) a false representation, (2) the defendant's knowledge or belief that the representation is false, (3) the defendant's intention to induce the plaintiff's reliance, (4) the plaintiff's justifiable reliance [on the misrepresentation], and (5) damages." *Nevada State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 665, 675 (Nev. 2021). Fraudulent concealment requires showing that a defendant concealed a material fact that it had a duty to disclose with the intent to defraud the plaintiff and induce it to act differently; the plaintiff was unaware of this and would have acted differently but for the concealment; and the plaintiff was harmed as a result. *See Leigh-Pink v. Rio Properties, LLC*, 512 P.3d 322, 325–26 (Nev. 2022) (citation omitted). In addition, the plaintiff must prove each element of the fraud claim by clear and convincing evidence. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).

---

[2] Because the Counterclaim Defendants were not parties to the CPPA, New U moves for summary judgment on breach of contract pursuant to an alter-ego liability theory. (ECF No. 373 at 24.) New U's declaratory relief claims are also only asserted against T1 Payments. (ECF No. 215 at ¶¶ 308–321.) Because the Court finds that neither Pixxles Counterclaim Defendants, Kasdon, Fairchild, nor King are the alter egos of T1 Payments and that New U failed to establish that T1UK is an alter ego of T1 Payments, the Court denies New U's motion for summary judgment as to New U's breach of contract counterclaim to the extent that it relies on alter-ego liability and New U's declaratory relief claims.

New U has provided sufficient evidence that Kasdon made material omissions regarding T1 Payments' expertise in providing lawful payment processing services to MLM companies and nutraceutical merchants, which New U relied on in entering into the CPPA. (ECF No. 373-2 at 3.) *See Blanchard v. Blanchard*, 839 P.2d 1320, 1322 (Nev. 1992) (fraudulent representation may be misleading "because it partially suppresses or conceals information"). Evidence supports that T1 Payments was not registered with Visa or Mastercard as a payment facilitator, when it contracted with New U, and so used a payment processing structure that routed funds through other entities based in Europe, which supports the inference, at this juncture, that T1 Payments was not a lawful or experienced payment facilitator. (ECF No. 373-2; 373-15 at 8–9; 119.) Together, this is enough information for a reasonable juror to find that Kasdon misrepresented T1 Payments' operations, so as to induce New U to enter the CPPA, which it was damaged by when payment processing abruptly stopped.

However, when viewing the evidence in the light most favorable to Counterclaim Defendants, the Court finds that there is a genuine dispute of material fact as to whether Kasdon was representing that T1 Payments was a payment facilitator registered with Visa or Mastercard when he stated that T1 Payments had expertise in extending lawful services to MLM and nutraceutical merchants. (ECF No. 372 at 7–9.) Accordingly, the Court denies both parties' motions for summary judgment as to Kasdon.

As to King, Fairchild, T1UK, and the Pixxles Counterclaim Defendants, New U presents no evidence of any false representations made by these parties, or affirmative acts to conceal information that they had a duty to disclose, so the Court will grant summary judgment to Counterclaim Defendants as to these parties.

**E. Conversion**

New U argues that transfer and retention of its merchant funds to a third

party, namely TGlobal Services LLC, establishes conversion. (ECF No. 373 at 18–19.) Counterclaim Defendants argue that New U cannot demonstrate conversion as to King, Fairchild, or the Pixxles Counterclaim Defendants because they did not individual exercise dominion or control over New U's property. (ECF No. 372 at 9–11.)

"Conversion is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights." *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006) (citing *Wantz v. Redfield*, 326 P.2d 413 (Nev. 1958)). "Yet, conversion generally is limited to those severe, major, and important interferences with the right to control personal property that justify requiring the actor to pay the property's full value." *Edwards*, 130 P.3d at 1287 (citing Restatement (Second) of Torts § 222A (1965)).

Nevada case law, though, "does not suggest that the measure of damages is a part of the definition of conversion," nor does it "declare the full value of the property converted to be the sole measure of damages." *Bader v. Cerri*, 96 Nev. 352, 609 P.2d 314, 317 (1980), *overruled on other grounds by Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 5 P.3d 1043 (2000).

"A conversion occurs whenever there is a serious interference to a party's rights in his property." *Id.* "When this happens the injured party should receive full compensation for his actual losses." *Id.* "The party seeking damages has the burden of proving both the fact of damages and the amount thereof." *Mort Wallin of Lake Tahoe, Inc. v. Com. Cabinet Co.*, 784 P.2d 954, 955 (Nev. 1989). "The latter aspect of the burden need not be met with mathematical exactitude, but there must be an evidentiary basis for determining a reasonably accurate amount of damages." *Id.*

New U alleges that New U only authorized T1 Payments to process and hold payments proceeds and reserves, yet T1 entities, Kasdon, Fairchild, and King

acted to withhold funds, which eventually were deposited into TGlobal Services LLC's account. (ECF No. 373 at 18–19.) However, New U presents no evidence showing that Kasdon, King, Fairchild, or T1UK, individually, "wrongfully exercised dominion and control" causing resulting damages. (*Id.*) Counterclaim Defendants present evidence that T1 Payments, not King, Fairchild, or the Pixxles Counterclaim Defendants processed New U's credit card transactions. Because New U cannot establish that King, Fairchild, Kasdon, and the Pixxles Counterclaim Defendants exercised dominion and control over the funds at issue, the Court denies New U's motion for summary judgment as to New U's conversion counterclaim against the Counterclaim Defendants, and grants summary judgment to Counterclaim Defendants as to King, Fairchild, and the Pixxles Counterclaim Defendants.

**F. Civil Theft**

New U alleges that T1 Payments withheld its payment proceeds without a lawful basis, and eventually transferred those funds to TGlobal Services LLC. (ECF No. 373 at 19.) Counterclaim Defendants contend that there is no evidence that TGlobal Services LLC transferred any funds to Counterclaim Defendants. (ECF No. 372 at 11–13.)

In Nevada, owners of stolen property may sue a person who "buys, receives, possesses or withholds [the owner's] property under circumstances that make such conduct a violation" of NRS 205.275, Nevada's criminal theft statute. NRS 41.580. A thieving company may be liable for receipt of stolen property by its alter ego. "The essence of the alter ego doctrine is to do justice whenever it appears that the protections provided by the corporate form are being abused." *Ene v. Graham*, 546 P.3d 1232, 1236 (Nev. 2024) (quoting *LFC Mktg. Grp., Inc.*, 8 P.3d 841, 845-46 (Nev. 2000)) (cleaned up).

While New U contends that T1 Payments retained its funds unlawfully, eventually transferring those funds to TGlobal Services LLC (ECF No. 373 at 19),

such allegations, even if supported by evidence, would not establish liability for civil theft. Clerk's entry of default has been granted against TGlobal Services LLC (ECF No. 390), therefore, New U's motion for summary judgment against TGlobal Services LLC is moot. Additionally, because New U presents no evidence that Kasdon, King, Fairchild, the Pixxles Counterclaim Defendants, or T1UK bought, received, possessed or withheld New U's property, New U cannot establish civil theft as to those parties. (*See* ECF No. 373.) Accordingly, the Court denies New U's motion for summary judgment on its civil theft counterclaim, and grants Counterclaim Defendants' motion for summary judgment, as to this counterclaim.

**G. Unjust Enrichment**

New U argues that after terminating processing, Counterclaim Defendants retained $1.4 million of New U's funds and imposed fees not authorized by the CPPA, while providing no services and assuming no risk. (ECF No. 373 at 25.) Counterclaim Defendants contend that Counterclaim Defendants cannot be liable because (1) the written contract precludes these claims, and (2) they are third parties not directly involved in the contract. (ECF No. 372 at 13–15.)

Under Nevada law, unjust enrichment is "the unjust retention . . . of money or property of another against the fundamental principles of justice or equity and good conscience." *Asphalt Prods. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995) (quotations omitted). To establish an unjust enrichment claim, the plaintiff must show "a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit." *Topaz Mut. Co., Inc. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992).

Counterclaim Defendants argue that New U cannot seek unjust enrichment because the existence of a written contract precludes a claim for these sort of equitable remedies. (ECF No. 372 at 13–14.) While the Court agrees that New U

cannot recover under both theories with regard to the same transaction, at this stage New U is free to seek both equitable remedies and breach of contract in the alternative. *WMCV Phase 3, LLC v. Shushok & McCoy, Inc.*, 2:10–CV–00661–GMN, 2013 WL 6858788, at *9 (D. Nev. Dec. 27, 2013) (holding that where a plaintiff claimed breach of contract and unjust enrichment in the alternative, and the court later found the contract unenforceable, the plaintiff was free to pursue unjust enrichment despite that it had sued for breach of the contract); *Drover v. LG Electronics USA, Inc.*, 2:12–CV–510 JCM VCF, 2012 WL 5198467, at *3 (D. Nev. Oct. 18, 2012) (holding same).

New U adduces evidence that Kasdon knows where New U's funds are being held, and that some of that money is being used. Kasdon specifically testified that T1 Payments holds merchant funds in a specific account, and that "profit is stripped" from this account. (ECF No. 373-8 at 13–14.) Kasdon refused to answer where the account was located or how much money was currently in the account. (ECF No. 372-2 at 10–12.) However, New U fails to adduce any evidence demonstrating that King, Fairchild, T1UK, or Pixxles Counterclaim Defendants have had any benefit conferred on them.

Thus, because the Court, in deciding whether to grant Counterclaim Defendants' motion for summary judgment, must view the evidence in the light most favorable to New U, it finds that there is a genuine dispute of material fact as to whether Kasdon retained New U's funds. New U alleges that T1 Payments, and Kasdon wrongfully retained New U's merchant funds, which is supported by Kasdon's deposition, which indicates that Kasdon knows where the funds are being retained, and that "profit is stripped" from this account. (ECF No. 373-8 at 13–14.) If a jury found New U's version of events credible, it could reasonably conclude that Kasdon accepted and retained a benefit conferred by New U. However, as to the other Counterclaim Defendants, New U has adduced no evidence that individual Counterclaim Defendants were unjustly enriched, and

so the Court grants Counterclaim Defendants' motion as to King, Fairchild, T1UK, and Pixxles Counterclaim Defendnats.

Similarly, in deciding whether to grant New U's motion for summary judgment, the Court weighs the evidence in the light most favorable to the non-moving party, Counterclaim Defendants, and finds that a jury could find that no Counterclaim Defendants has appreciated the benefit, here, as Kasdon's deposition also indicates that the funds are being held in an account, and not being used. (ECF No. 372-2 at 9–11.) The Court therefore denies both parties' motions as to Kasdon, and grants Counterclaim Defendants' motion as to King, Fairchild, T1UK, and Pixxles Counterclaim Defendants.

**H. Nevada RICO**

New U argues that Counterclaim Defendants are liable under the Nevada RICO statute for conducting a pattern of four predicate racketeering acts, including (1) obtaining money valued at $650 or more by false pretenses; (2) embezzlement; (3) extortion; and (4) engaging in multiple transactions of fraud or deceit. (ECF No. 373 at 23–26.) Counterclaim Defendants contend that New U failed to demonstrate that individual Counterclaim Defendants were involved in a pattern of predicate acts. (ECF No. 372 at 16–18.)

Under the Nevada RICO statute, it is a crime "to use or invest" the "income derived, directly or indirectly, from racketeering activity." Nev. Rev. Stat. § 207.400(1)(a). The statutory scheme also "provides a private right of action for '[a]ny person injured in his business or property' by a RICO violation." *Allum v. Valley Bank of Nevada*, 849 P.2d 297, 298 (Nev. 1993) (citing Nev. Rev. Stat. § 207.470(1)). To establish a civil RICO claim, New U must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiffs' business or property." *Hunt v. Zuffa*, LLC, 361 F. Supp. 3d 992, 1000 (D. Nev. 2019). Under Nevada law, "a person engages in a pattern of racketeering activity by committing at least two enumerated predicate

criminal acts within a specified timeframe." *Id.*

To establish obtaining money by false pretenses under NRS 205.380, New U must show that Counterclaim Defendants obtained money through a "representation of some fact or circumstance which is not true and is calculated to mislead . . . (and) may consist of any act, word, symbol or token calculated and intended to deceive. It may be made either expressly, or by implication." *Bright v. Sheriff*, 521 P.2d 371, 373 (1974). Nevada law defines extortion as deliberately threatening someone's property or reputation to gain money or property. NRS 205.320. Embezzlement requires a bailee to convert property to their own use with the intent to steal such property. NRS 205.300. NRS 205.377 proscribes engaging in "fraud or deceit upon a person by means of a false representation or omission of a material fact" that (1) a "person knows to be false or omitted;" the person "intends another to rely on;" and (3) "[r]esults in a loss to any person who relied on the false representation or omission."

New U presents no evidence supporting the inference that any Counterclaim Defendant committed extortion or embezzlement, because it does not allege any threats, or that Fairchild, King, T1UK, or the Pixxles Counterclaim Defendants committed, or were involved with, any of the predicate acts. (*See* ECF No. 373.) The Court, accordingly, grants Counterclaim Defendants' motion as to extortion, and as to Fairchild, King, T1UK, and the Pixxles Counterclaim Defendants for New U's Nevada RICO claim.

As to embezzlement, while New U alleges that money was entrusted to T1 Payments and that Kasdon may have converted those funds with intent to steal (ECF No. 373-8 at 13–14), New U includes no evidence of a pattern of this behavior (*See* ECF No. 373), and Kasdon testified that all of New U's money is sitting in a bank account untouched (ECF No. 372-2 at 10–13.). Accordingly, the Court denies summary judgment to both parties as to New U's Nevada RICO claim against Kasdon for embezzlement.

Regarding the predicate acts of false pretenses and engaging in multiple transactions of fraud or deceit, as explained above, there is a genuine dispute of material fact as to whether Kasdon engaged in fraudulent behavior. At oral argument, New U clarified that a pattern was established by the many payments that New U entrusted T1 Payments to process, which no party disputes occurred. However, as above, there is a genuine dispute of material fact as to whether Kasdon was representing that T1 Payments was a payment facilitator registered when Visa or Mastercard when he stated that T1 Payments had expertise in extending lawful services to MLM and nutraceutical merchants, and thus whether he knowing made false statements or material omissions with intent to defraud. Accordingly, the Court denies summary judgment to both parties on New U's claim against Kasdon for Nevada RICO for false pretenses and fraud and deceit.

**I. Federal RICO**

New U argues that the record establishes that Counterclaim Defendants were engaged in an enterprise and a pattern of racketeering activity, including wire fraud, bank fraud, access device fraud, and money laundering, which caused concrete financial injury. (ECF No. 373 at 26–28.) Counterclaim Defendants contend that New U cannot substantiate the required predicate acts, as they are fundamentally inapplicable to the conduct at issue. (ECF No. 372 at 19–22.)

To prevail on a federal civil RICO claim, a plaintiff must demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir.2005) (citation omitted).

Racketeering activity includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is

chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A). Racketeering activity also includes a variety of specified federal crimes, including mail and wire fraud. Id. § 1961(1)(B).

To establish wire or mail fraud, the New U must show (1) Counterclaim Defendants formed a scheme or artifice to defraud; (2) Counterclaim Defendants used the mails or wires in furtherance of the scheme; and (3) Counterclaim Defendants acted with the specific intent to deceive or defraud. *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 620 (9th Cir. 2004); *United States v. Manion*, 339 F.3d 1153, 1156 (9th Cir. 2003). The mails or wires are used in furtherance of a scheme even if use of the mails or wires is not an "essential element" of the fraudulent the scheme, so long as it is "a step in the plot." *United States v. Shipsey*, 363 F.3d 962, 971 (9th Cir. 2004) (quotation omitted).

To establish bank fraud, New U must prove five elements: (1) Counterclaim Defendants knowingly carried out a scheme to obtain money or property from a bank by making false statements or promises; (2) Counterclaim Defendants "knew the statements or promises were false;" (3) "the statements or promises were material, in that they had a natural tendency to influence or were capable of influencing a financial institution to part with money or property;" (4) Counterclaim Defendants "acted with intent to defraud;" and (5) the bank was federally insured. *United States v. Hossain,* No. 2:13-CR-00119-GMN, 2014 WL 4354125, at *1 (D. Nev. Sept. 2, 2014).

To establish access device fraud, New U must demonstrate that Counterclaim Defendants (1) "knowingly used an unauthorized access device at any time during a one-year period;" (2) "by using the unauthorized access device during that period, [Counterclaim Defendants] obtained things of value, their value together totaling $1,000 or more during that period;" 3) Counterclaim Defendants "acted with the intent to defraud;" and 4) Counterclaim Defendants' "conduct in some way affected interstate or foreign commerce." *United States v.*

*Slade*, No. CR-09-1492-1-PHX-ROS, 2013 WL 2455926, at *7 (D. Ariz. June 5, 2013).

"Money laundering requires a financial transaction using proceeds knowingly derived from unlawful activity for the purpose of either promoting unlawful activity or for concealment." *U.S. v. Jaimez*, 45 F.4th 1118, 1124 (9th Cir. 2022); *see also* 18 U.S.C. § 1956(a)(1).

Here, New U fails to adduce evidence supporting that Counterclaim Defendants, individually, were involved in any predicate acts. (*See* ECF No. 373.) There is no evidence that Fairchild, King, Kasdon, T1UK, or Pixxles Counterclaim Defendants, individually, used the wires or mail in furtherance of a scheme to defraud. (*Id.*) New U also presents no evidence that Fairchild, King, Kasdon, T1UK, or Pixxles Counterclaim Defendants, knowingly used an authorized access device to obtain things of value, or that they used proceeds from unlawful activity for concealment or to promote unlawful activity. (*Id.*) Instead, New U merely alleges, without support, that "Kasdon directed the enterprise and its predicate acts," while "Fairchild and King knowingly enabled and perpetuated the scheme," and the "corporate entities served as the enterprise vehicles." (ECF No. 373 at 28.)

In contrast, Counterclaim Defendants present evidence that T1 Payments retained funds to repay to merchants pursuant to the CPPA, that no federally insured bank or the use of wires was involved, that no access device was used unlawfully, and that individual Counterclaim Defendants were not involved in the alleged predicate acts. (ECF No. 372 at 19–22.) Accordingly, the Court grants Counterclaim Defendants summary judgment as to the federal RICO counterclaim, and denies New U summary judgment.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that New U's motion for summary judgment (ECF No. 373) is DENIED.

IT IS FURTHER ORDERED that Counterclaim Defendants' partial motion for summary judgment (ECF No. 372) is granted as to (1) the fraud counterclaim against King, Fairchild, T1UK, and the Pixxles Counterclaim Defendants, (2) the conversion counterclaim against King, Fairchild, and the Pixxles Counterclaim Defendants, (3) the civil theft counterclaim against Counterclaim Defendants, (4) the unjust enrichment counterclaim against King, Fairchild, T1UK, and the Pixxles Counterclaim Defendants, (5) all Nevada RICO claims against King, Fairchild, T1UK, and the Pixxles Counterclaim Defendants, and the Nevada RICO claim against Kasdon for extortion; and (6) the assertion of alter ego liability as to Pixxles Counterclaim Defendants.

IT IS FURTHER ORDERED that New U's motions to seal (ECF Nos. 374, 388) are GRANTED.

DATED THIS 21st day of August 2026.

ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE